# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

**JUL 2 3 2020**

David J. Bradley, Clerk of Court

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTIONS TO REMAND HIS STATE LAW CAUSE OF ACTION AGAINST THE DEFENDANTS TO MONTGOMERY COUNTY, TEXAS, DISTRICT COURT BECAUSE THE FEDERAL BANKRUPTCY COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S MONTGOMERY COUNTY CAUSE OF ACTION, BECAUSE REMAND IS REQUIRED PURSUANT TO 28 U.S.C. SECTION 1334(c)(2) AND BECAUSE REMAND IS PERMISSIVE PURSUANT TO U.S.C. SECTION 1334(c)(1); PLAINTIFF'S MOTION TO RECUSE BANKRUPTCY JUDGE DAVID JONES; AND PLAINTIFF'S STATEMENT OF COMPLIANCE WITH BANKRUPTCY RULE 927(e)(3)**

COMES NOW, the Plaintiff, Michael Van Deelen, and for his Plaintiff's Motions to Remand His State Law Cause of Action Against the Defendants to Montgomery County, Texas, District Court Because the Federal Bankruptcy Court Does Not Have Jurisdiction Over Plaintiff's Montgomery County Cause of Action, Because Remand Is Required Pursuant to 28 U.S.C. Section 1334(c)(2) and Because Remand Is Permissive Pursuant to U.S.C. Section 1334(c)(1); for his Plaintiff's Motion to Recuse Bankruptcy Judge David Jones and for his Plaintiff's Statement of Compliance With Bankruptcy Rule 927(e)(3) states as follows:

## BACKGROUND

Plaintiff represented himself as a Party In Interest during McDermott International's Chapter 11 bankruptcy proceeding in the U.S. District Court for the Southern District of Texas (case number 20-30336).

On June 23, 2020, Plaintiff filed a civil action in Montgomery County, Texas, District Court (Case number 20-06-07348) alleging only state-law causes of action (fraud, conversion, negligent misrepresentation, breach of fiduciary duty and conspiracy) against defendants David Dickson, Stuart Spence and Scott Lamb, all current or former employees of McDermott International.  All three defendants are residents of Texas and at least one of the defendants, Mr. Lamb, is a resident of Montgomery County, Texas.

Plaintiff's Montgomery County suit against the defendants is incorporated in the defendants Notice of Removal filed in this Court on July 17, 2020.

## PLAINTIFF'S MOTION TO RECUSE BANKRUPTCY JUDGE DAVID JONES

Plaintiff respectfully moves this Court to recuse bankruptcy court Judge David Jones from deciding the removal/remand controversy briefed herein.

On or about June 2, 2020, Plaintiff filed his Petition for Writ of Mandamus Against the Honorable David R. Jones in the Fifth Circuit Court of Appeals (case no. 20-20286).  Plaintiff subsequently filed his Notice of Filing (Document 939) in this case (20-30336) on June 3, 2020.  The Notice of Filing, which contains Plaintiff's Writ, was docketed on June 4, 2020.  Said Writ, which is presently before the Fifth Circuit Court of Appeals, is incorporated herein by reference.

In his Writ, Plaintiff shows incidents to the Court of Appeals in which Judge Jones has shredded Plaintiff's Constitutional rights by, among other things, refusing to hear Plaintiff's motions in the McDermott International bankruptcy case, by falsely accusing Plaintiff of improper acts during the pendency of the bankruptcy case, by telling the attorneys for the Defendants herein that they "were the smartest people in the country" while accusing Plaintiff in open court of "knowing nothing", and, most notably, by unconstitutionally issuing a permanent injunction against the Plaintiff without affording Plaintiff a hearing or trial.

Among other things, Plaintiff has asked the Court of Appeals to disqualify Judge Jones from presiding over a trial on the actions unconstitutionally prohibited by Judge Jones' March, 23, 2020, Order, should the Court of Appeals order said trial to be held.  In requesting this, plaintiff stated to the Court of Appeals that "The trial court's [Judge Jones'] animosity toward Petitioner is so great that Petitioner is concerned that the trial

court will simply continue to make unlawful, unconstitutional rulings during a trial on the actions prohibited by its March 23, 2020, Order."

Plaintiff is similarly convinced that, should Judge Jones decide the removal/remand controversy briefed herein, it will not be possible to get a fair hearing given the animosity and unconstitutional behavior Judge Jones has demonstrated with respect to the plaintiff in the McDermott International bankruptcy case.

WHEREFORE, in the interest of justice, Plaintiff respectfully requests this Court to recuse Judge Jones from deciding the removal//remand controversy briefed herein.


### THIS COURT DOES NOT HAVE JURISDICTION TO HEAR REMOVED CASE

28 U.S.C. Section 1478(a) does not permit removal of this action due to lack of Jurisdiction.

Under 28 U.S.C. §1478(a) "any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce [a] . . . regulatory or police power" may be removed "if the bankruptcy courts have jurisdiction over such claim or cause of action."

First of all, McDermott International's Plan had been confirmed and the Effective Date of the Plan occurred on June 30, 2020.  Plaintiff received notice of these events.  On July 17, 2020, defendants Dickson, Spence and Lamb (hereinafter, 'Defendants') filed their Notice of Removal in this Court.

The Fifth Circuit has held that "[a]fter a plan is confirmed, the bankruptcy court's jurisdiction is limited to maters pertaining to the implementation or execution of the plan" or in other words, "matters that impact compliance with or completion of the

reorganization plan." *Highland Capital Mgmt., LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 (5th Cir. 2008) (citing to *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001), and *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 305 (5th Cir. 2002)).  Because no "if related" jurisdiction existed at the time of removal, this Court does not have jurisdiction of the Defendants.  See *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 534 F.3d 325, 335 (5th Cir. 2008).

 *In re Craig's Stores, Supra*, the Fifth Circuit stated:

 'Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). **After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan** (emphasis added). *In re Fairfield Communities, Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize. This theory has antecedents in our court's jurisprudence, which has observed that the reorganization provisions of the former Bankruptcy Act "envisage [] that out of the proceedings will come a newly reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court." *In re Seminole Park & Fairgrounds, Inc.*, 502 F.2d 1011, 1014 (5th Cir. 1974). Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction.'

 The Defendants are individuals who were not debtors or defendants in the McDermott International bankruptcy action in this Court.  They were sued only for state-law causes of action in Montgomery County, Texas, District Court (case 20-06-07348). The Montgomery County case has nothing to do with "matters pertaining to the implementation or execution of the plan" or "matters that impact compliance with or

completion of the reorganization plan." and the Defendants provide no evidence in their

Notice of Removal that it does.  The post-confirmation dispute at issue herein has nothing

to do with any obligation created by the debtor's reorganization plan.  See *In re Craig's*

*Stores, Supra.*

 Secondly, 28 U.S.C. section 1471(b) states:

"(b) Notwithstanding an Act of Congress that confers exclusive jurisdiction on a
court or courts other than the district courts, the district courts shall have original but not
exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or **related
to** cases under title 11 (emphasis added)."

 The Fifth Circuit has stated that "it is not necessary to distinguish between

proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11 "

as the real necessary determination is "whether a matter is at least 'related to' the

bankruptcy" when determining if a matter falls within bankruptcy subject matter

jurisdiction.  *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  Proceedings

that are "arising under" are those in which the matter "involve[s] a cause of action

created or determined by a statutory provision of title 11." *Id.* at 96. Those are

distinguishable from proceedings that are "arising in," which involve matters "that are

not based on any right expressly created by title 11, but nevertheless, would have no

existence outside of the bankruptcy," such as "[p]roceedings invoking the bankruptcy

court's statutory authority to enter orders necessary for the consummation of a confirmed

plan…" *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States*

*Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002)."

 The Fifth Circuit in *In re Wood, Supra,* went on to adopt a "related to" test

articulated by the Third Circuit, which enjoys broad support, that looks at "whether the

outcome of that proceeding could conceivably have any effect on the estate being

administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor, Inc. v. Higgins*, 743
F.2d 984, 994 (3d Cir. 1984)). In applying the test, the Fifth Circuit looked to see whether
the proceeding was "sufficiently related to the pending bankruptcy to allow the district
court to exercise jurisdiction under section 1334," which is to say that "plaintiff's claims
must affect the estate, **not just the debtor** (emphasis added)." *Id.* at 93-94.

In *Pacor, Supra*, the court stated:

"In enacting section 1471(b), Congress intended to grant comprehensive
jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously
with all matters connected with the bankruptcy estate. *See* H.Rep. No. 598, 95th Cong.,
2d Sess., 43-48, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6004-08. *See also
Young v. Sultan, Ltd. (In re Lucasa International, Ltd.)*, 6 B.R. 717, 719
(Bankr.S.D.N.Y.1980) (§ 1471(b) jurisdiction is "pervasive"); *Westinghouse Credit Corp.
v. Yeary (In re Brothers Coal Co.)*, 6 B.R. 567, 570-71 (Bankr.W.D.Va.1980) (§ 1471(b)
jurisdiction is "broad."). The jurisdiction of the bankruptcy courts to hear cases related to
bankruptcy is not without limit, however, and there is a statutory, and eventually
constitutional, limitation to the power of a bankruptcy court. For subject matter
jurisdiction to exist, therefore, there must be some nexus between the "related" civil
proceeding and the title 11 case. *See In re Hall*, 30 B.R. 799, 802 (M.D.Tenn.1983); 1
*Collier on Bankruptcy* ¶ 3.01, at 3-48 to 3-49 (15th ed. 1982).

The usual articulation of the test for determining whether a civil proceeding is
related to bankruptcy is whether *the outcome of that proceeding could conceivably have
any effect on the estate being administered in bankruptcy. E.g., In re Hall*, 30 B.R. at
802; *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982);
*In re U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y. 1981); 1 *Collier on
Bankruptcy* ¶ 3.01 at 3-49. Thus, the proceeding need not necessarily be against the
debtor or against the debtor's property. An action is related to bankruptcy if the outcome
could alter the debtor's rights, liabilities, options, or freedom of action (either positively
or negatively) and which in any way impacts upon the handling and administration of the
bankrupt estate.

On the other hand, the mere fact that there may be common issues of fact between
a civil proceeding and a controversy involving the bankruptcy estate does not bring the
matter within the scope of section 1471(b). Judicial economy itself does not justify
federal jurisdiction. *See generally Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413,
2420, 49 L.Ed.2d 276 (1976). "[J]urisdiction over nonbankruptcy controversies with third
parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy
does not exist." *In re Haug*, 19 B.R. 223, 224-25 (Bankr.D.Ore.1982); *See also In re
McConaghy*, 15 B.R. 480, 481 (Bankr.E.D.Va.1981) (Bankruptcy court lacks jurisdiction
to decide disputes between third parties in which the estate of the debtor has no interest)."

The outcome of Plaintiff's Montgomery County, Texas, state-law case against the individual, non-debtor defendants, two of whom did not even work for McDermott International at the time of Plaintiff's suit against them (Spence and Lamb), has no conceivable effect on the estate (McDermott International) that *was* administered in bankruptcy and whose plan confirmation and effective date was before the Defendants' Notice of Removal. The Montgomery County suit has no bearing on the liabilities or assets of the bankrupt debtor or the debtor's discharge. The estate simply has no interest in the Plaintiff's Montgomery County, Texas, suit against the Defendants and the Defendants do not present evidence otherwise in their Notice of Removal.

In their Notice of removal, the Defendants state:

"3. ..............The entry of a final judgment against Defendants would directly and substantially affect the Debtors, their operations, and/or the implementation or execution of the Plan. Moreover, adjudication of the claims requires interpretation and enforcement of this Court's Confirmation Order [Plan], which releases and exculpates Defendants from certain claims that have been brought.

4. ..................adjudication of the claims would require interpretation and enforcement of this Court's Confirmation Order [Plan], including the release and exculpation provisions."

The Defendants make the above statements without evidence. They state that the Confirmation Plan 'releases and exculpates Defendants from certain claims that **have been brought** (emphasis added).' Plaintiff's Montgomery County suit was brought after the Confirmation Plan, as noted herein. It is therefore not possible that the claims 'that have been brought' cited by the Defendants can refer to the Plaintiff's Montgomery County suit against the Defendants.

What 'Defendants' are the Defendants talking about? It is seems unlikely that defendants Lamb and Spence had any release and exculpation provisions as they both left

their employment with McDermott International before the company declared

bankruptcy.  Furthermore, defendant Spence has a separation agreement that plaintiff, on

information and belief, believes did not provide any indemnification for suits brought

against him after his employment for acts committed during his employment with the

company.

The release provisions of McDermott's Confirmation Plan do not apply to the

Plaintiff.  During the course of the bankruptcy proceedings, the debtors sought

affirmative releases from shareholders.  **Plaintiff did not release the debtors from

wrongdoing and is therefore not a "releasing party" with respect to the Plan**.

Exhibit 1 herein contains the opt out form Plaintiff submitted to the debtors that excluded

him from the Third-Party Release set forth in Article VIII.D  of the Plan.  There is

nothing for the Court to decide here.  Plaintiff is not a releasing party and he did not

release the debtors from wrongdoing.  See Article VIII of the Second Amended Joint

Prepackaged Chapter 11 Plan of Reorganization (Technical Modifications) of McDermott

International, Inc. and Its Debtor Affiliates (Document 651).

The Defendants in their Notice of Removal fail to tell this Court that the

Confirmation Plan (Document 651) does not provide exculpation "**for claims related to

any act or omission that is determined in a Final Order by a court of competent

jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence**

(emphasis added)."  (Document 651, page 58, 'Exculpation', incorporated by reference

herein).  These are the claims raised in Plaintiff's Montgomery County District Court

state law suit.  The Defendants are not therefore exculpated from the claims raised in

Plaintiff's Montgomery County suit and the Confirmation Plan allows the suit to be

brought in any 'court of competent jurisdiction', including Montgomery County, Texas, District Court. The 'exculpation provisions' that allegedly tie Plaintiff's Montgomery County suit to the Confirmation Plan actually do just the opposite: they release and remove Plaintiff's Montgomery County suit from the Confirmation Plan.

It is established case law that it is within the purview of the state court to interpret the releases and exculpations. As explained by the Supreme Court, "It is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." Gulf Offshore Co. v. Mobil Oil Corp., 101 S. Ct. 2870, 2875-76 (1981). See also Malesovas v. Sanders, No. H-04-3122, 2005 WL 1155073, *3 n. 6 (S.D. Tex. May 16, 2005) ("Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.") (quoting Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004)).

The Defendants need to provide to the Plaintiff and this Court evidence of any Confirmation Plan release and exculpation provisions that prevent Plaintiff from suing them in Montgomery County, Texas, District Court. Given the above, it does not appear that they have such evidence.

WHEREFORE, Plaintiff moves the Court to remand Plaintiff's Montgomery County, Texas, District Court case against the Defendants to Montgomery County District Court because the federal bankruptcy court does not have jurisdiction over Plaintiff's Montgomery County, Texas, suit against the Defendants.

## MANDATORY ABSTENTION PURSUANT TO 28 U.S.C. SECTION 1334(c)(2)

Even if this Court had jurisdiction to hear this removed case, remand would be appropriate under 28 U.S.C. Section 1334(c)(2).

The key distinction between mandatory abstention and equitable or discretionary remand is that mandatory abstention applies "only to non-core proceedings--that is, proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a case under title 11.'" *In re Gober*, 100 F.3d at 1206 (comparing 28 U.S.C. §§ 157(b)(1) & 1334(c)(2)); *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10; *Ramirez*, 413 B.R. at 626-27. *Cf. Stern*, 131 S. Ct. at 2618.

Section 1334(c)(2) provides for mandatory abstention when:

"[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

A court must abstain from hearing the state law claim at issue when all of the following factors are met:

(1) a motion has been timely filed requesting abstention;
(2) the cause of action is essentially one that is premised on state law;
(3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under title 11;
(4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b);
(5) an action has been commenced in state court; and
(6) the action could be adjudicated timely in state court.

*J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10 (citing to *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997); *In re Gober*, 100 F.3d at 1206; *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782-83 (E.D. Tex. 2001); *Lee v. Miller*, 263

B.R. 757, 763 (S.D. Miss. 2001); *Chickaway v. Bank One Dayton, N. A.*, 261 B.R. 646,

649 (S.D. Miss. 2001); *WRTCreditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*,

75 F. Supp. 2d 596, 605 (S.D. Tex. 1999)). The determination of the status of a cause of

action is rooted in the list of core proceedings in 28 U.S.C. § 157(b)(2). Although §

157(b)(2) is non-exhaustive, that does not mean that every cause of action that can be

categorized as a "core proceeding" under § 157(b)(2) should be included, given decisions

such as *Marathon* and *Stern. Ramirez*, 413 B.R. at 627; *see also Stern*, 131 S. Ct. at 2618;

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

   Plaintiff has satisfied the first factor given above in that he filed this pleading on

July 23, 2020, four days after he was served the Defendants' Notice of Removal.

   Plaintiff has satisfied the second, third and fifth factors given above in that the

Montgomery County, Texas, District Court suit against the Defendants is entirely

premised on state law and involves only claims of Fraud, Conversion, Negligent

Misrepresentation, Breach of Fiduciary Duty and Civil Conspiracy and does not involve

federal law.

   Plaintiff has satisfied the fourth factor given above because there is no federal

subject matter jurisdiction over Plaintiff's state law claims absent jurisdiction pursuant to

Section 1334(b) and diversity of citizenship is lacking.

   The sixth and final factor looks to whether "the action could be adjudicated timely

in state court." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10. The standard for

timely adjudication in state court does not place a burden upon the movant to show a

"*more timely* adjudicat[ion] in state court, but only that the matter can be timely

adjudicated..." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13. However, Plaintiff addresses this 'burden'.

On information and belief, Montgomery County is 'open' and not subject to a shelter-in-place order. The Montgomery County District Court Clerk's office is currently fully staffed and open to the public during the COVID-19 pandemic. The Clerk's office dockets cases and events on a normal basis. Court 284, where the Defendants' case was removed from, is open for the hearing of motions, etc.. There is no indication that the Montgomery County Court or its staff is unable to efficiently and normally handle its case load during the pandemic.

On the other hand, on information and belief, Harris County is on lock-down status. Federal in-court appearances have been deferred. The federal Clerk's office is operating with a 'much reduced staff'. The docketing of federal cases is being done remotely. Furthermore, the Southern District of Texas Bankruptcy Court is SWAMPED with cases as Houston and Texas companies operating in the oil patch continue to file for bankruptcy at an alarming rate.

"[The] Covid-19 [pandemic] ....does not weigh in favor of retaining federal jurisdiction". Southern District of Texas Chief Judge Lee H. Rosenthal in *American General Life Insurance Company v. Schahin II Finance Company (SPV) Limited*, Civil Action No. H-19-4025, U.S. District Court, S.D. Texas, Houston Division (June 16, 2020).

The above illustrates that there is an exceedingly high likelihood that Plaintiff's state-law case against the Defendants will be adjudicated much more quickly in Montgomery County District Court than it would be in the Southern District of Texas

Bankruptcy Court. This is amplified by the fact that state law causes of action against the individual Defendants were not raised during the pendency of the bankruptcy proceedings. If the bankruptcy court were to hear Plaintiff's state law claims against the Defendants, it would have to "start fresh" with a new case and would not have an advantage because it had previously heard the debtor's bankruptcy case.

Furthermore, since the Defendants have rendered no evidence to indicate that the state court could *not* adjudicate the matter in a timely fashion, the Court must presume that the state court will timely adjudicate the matter, given the immense policy interest in comity. *In re Doctors Hosp.*, 351 B.R. at 846 n.29. "While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not necessary where the movant is contesting the removal of his own state action." *In Re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *Abadie v. Poppin*, 154 B.R. 86, 90 (N.D. Cal. 1993)).

Given the above, Plaintiff has satisfied the sixth factor that the action could be adjudicated timely (or more timely) in state court.

WHEREFORE, Plaintiff moves the Court to remand Plaintiff's Montgomery County, Texas, District Court case against the Defendants to Montgomery County District Court because it is required to do so by 28 U.S.C. Section 1334(c)(2).


### PERMISSIVE ABSTENTION PURSUANT TO 28 U.S.C. SECTION 1334 (c)(1)

Section 1334 provides the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases

under title 11." 28 U.S.C. Section 1334(b).  However, under most circumstances, there is

"nothing in this section [that] prevents a district court in the interest of justice, or in the

interest of comity with State courts or respect for State law, from abstaining from hearing

a particular proceeding arising under title 11 or arising in or related to a case under title

11." Section 1334 (c)(1).; *Treyson, Supra.*

As noted herein, Plaintiff has filed a Writ of Mandamus against the bankruptcy

court judge, David Jones, which is currently before the Fifth Circuit Court of Appeals.  In

his Writ, Plaintiff shows incidents to the Court of Appeals in which Judge Jones has

shredded Plaintiff's Constitutional rights by, among other things, refusing to hear

Plaintiff's motions in the McDermott International bankruptcy case, by falsely accusing

Plaintiff of improper acts during the pendency of the bankruptcy case, by telling the

attorneys for the Defendants herein that they "were the smartest people in the country"

while accusing Plaintiff in open court of "knowing nothing", and, most notably, by

unconstitutionally issuing a permanent injunction against the Plaintiff without affording

Plaintiff a hearing or trial.

Among other things, Plaintiff has asked the Court of Appeals to disqualify Judge

Jones from presiding over a trial on the actions unconstitutionally prohibited by Judge

Jones' March, 23, 2020, Order, should the Court of Appeals order said trial to be held.  In

requesting this, plaintiff stated to the Court of Appeals that "The trial court's [Judge

Jones'] animosity toward Petitioner is so great that Petitioner is concerned that the trial

court will simply continue to make unlawful, unconstitutional rulings during a trial on the

actions prohibited by its March 23, 2020, Order."

Plaintiff is similarly convinced that, should Judge Jones preside over Plaintiff's Montgomery County, Texas, case, it will not be possible to get a fair hearing given the animosity and unconstitutional behavior Judge Jones has demonstrated with respect to the plaintiff in the McDermott International bankruptcy case. Accordingly, in the interest of justice, as well as interest of comity with State courts and respect for State law, Plaintiff moves this Court to remand this case to Montgomery County, Texas, District Court, where Plaintiff believes he will receive a fair trial.

WHEREFORE, Plaintiff moves the Court to remand Plaintiff's Montgomery County, Texas, District Court case against the Defendants to Montgomery County District Court because it may do so by 28 U.S.C. Section 1334(c)(1).

## THE DEFENDANTS ARE FORUM SHOPPING

The Defendants' attorneys are well aware of the animosity of the bankruptcy court toward the plaintiff and its bias against him. They are undoubtedly aware that the bankruptcy court said during open court that the McDermott attorneys were "the smartest people in the country". They are also undoubtedly aware that the bankruptcy court in open court accused Plaintiff of "knowing nothing". (At least one of the Defendants' attorneys was present during both statements.) The Defendants hope to transfer Plaintiff's Montgomery County case back to the bankruptcy court in order to gain a perceived advantage in the  litigation. They should not be allowed to do this.

## STATEMENT OF COMPLIANCE WITH BANKRUPTCY RULE 927(e)(3)

Bankruptcy Rule 9027(e)(3) requires that this pleading contain a statement that Plaintiff "does or does not consent to entry of final orders or judgment by the bankruptcy court." Plaintiff does not consent to entry of final orders or judgment by the bankruptcy court.

Dated July 23, 2020

Plaintiff
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this 23rd day of July, 2020, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

Michael Van Deelen

# EXHIBIT 1

## PLAINTIFF'S OPT OUT FROM THIRD-PARTY RELEASE

**EXHIBIT A**
**OPTIONAL: RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of McDermott International, Inc. and Its Debtor Affiliates* (as may be amended from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a holder affirmatively opts out or files an objection to the Third-Party Release with the Bankruptcy Court on or before the Plan Voting Deadline.

**If you believe you are a holder of a Claim or Interest with respect to McDermott International, Inc. or its affiliates and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please complete, sign, and date this Opt Out Form and return it promptly** via first class mail (or in the enclosed reply envelope provided), overnight courier, via the Solicitation Agent's online E-Ballot Portal, or hand delivery to Prime Clerk LLC (the "Solicitation Agent") at the address set forth below. Holders are strongly encouraged to submit their Opt Out Form through the Solicitation Agent's online E-Ballot Portal. For the avoidance of doubt, if you hold Existing Interests through a broker nominee, you cannot submit your Opt-Out via E-Ballot; rather, you must complete and return the paper Opt-Out Form. Parties that submit their Opt Out Form using the E-Ballot Portal should NOT also submit a paper Opt Out Form.

> **Use of Hard Copy Opt Out Form.** To ensure that your hard copy Opt Out Form is counted clearly sign and return your Opt Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to: McDermott Opt Out Form Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**THIS OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY WEDNESDAY, FEBRUARY 19, 2020, AT 4:00 P.M. PREVAILING CENTRAL TIME (THE "RESPONSE DEADLINE"). IF THE OPT OUT FORM IS RECEIVED AFTER THE RESPONSE DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.  Amount of Claim or Interests.**

The undersigned hereby certifies that, as of Friday, January 17, 2020 (the "Voting Record Date"), the undersigned was the holder of either (a) Class 1 Other Secured Claims, (b) Class 2 Other Priority Claims, (c) Class 3 Other Prepetition Financing Claims, (d) Class 4 Bilateral Facility Claims, (e) Class 10 General Unsecured Claims, (d) Class 13 Existing Preferred Equity Interests in McDermott, or (e) Class 14 Existing Common Equity Interests in McDermott in the following aggregate amount (insert amount in box below)[1]:

| |
|---|
| Class 1 Other Secured Claims Amount $ _____ |
| OR |
| Class 2 Other Priority Claims Amount $ _____ |
| OR |
| Class 3 Other Prepetition Financing Claims Amount $ _____ |
| OR |

---

[1]   To the extent there are any discrepancies between the applicable registers or records of holders and the amounts claimed on this opt-out form, the applicable registers or records shall govern.

Class 4 Bilateral Facility Claims Amount $ _____

OR

Class 10 General Unsecured Claims Amount $ _____

OR

Class 13 Existing Preferred Equity Interests in McDermott Amount $ _____

OR

Class 14 Existing Common Equity Interests in McDermott Amount $ _30,000 Shares_

**Item 2.** Important information regarding the Third-Party Release.

Article VIII.D of the Plan contains the following Third-Party Release:

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:

1. the Debtors (including the capital structure, management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Superpriority Credit Agreement, the Credit Agreement, the 2021 LC Agreement, the Lloyds Letter of Credit Agreement, Senior Notes Indenture, the Senior Notes, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Credit Agreement, the Exit Facility Documents, or the Plan (including, for the avoidance of doubt, the Plan Supplement);

2. any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Rights

Offering, the Disclosure Statement, the DIP Credit Agreement, the New Warrants Agreements, the Exit Facility Documents, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases,

3. the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, the Rights Offering, or the distribution of property under the Plan or any other related agreement; or

4. any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Documents, or any other financing document under and as defined therein), (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, any Definitive Document, or any agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, the New Warrants Agreements, or any Claim or obligation arising under the Plan, or (iii) the rights of holders of Allowed Claims to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing third-party release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the foregoing third-party release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good faith settlement and compromise of the Claims released by the foregoing third-party release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing third-party release.

Definitions Related to the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER AND EACH DIP LETTER OF CREDIT ISSUER; (E) EACH AGENT; (F) THE SENIOR NOTES TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) EACH HEDGE BANK; (I) EACH CASH MANAGEMENT BANK; (J) EACH LENDER UNDER THE SUPERPRIORITY CREDIT AGREEMENT, CREDIT AGREEMENT, THE 2021 LC AGREEMENT, AND THE LLOYDS LETTER OF CREDIT AGREEMENT; (K) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (L) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (M) EACH ISSUER (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (N) EACH ISSUER (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (O) THE TERM LOAN AD HOC GROUP, THE LIQUIDITY LENDER

STEERING COMMITTEE, AND THE SENIOR NOTES AD HOC GROUP; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT OPTS OUT OF THE RELEASES SHALL NOT BE A "RELEASED PARTY."

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS EACH OF THE FOLLOWING, SOLELY IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER AND EACH DIP LETTER OF CREDIT ISSUER; (E) EACH AGENT; (F) THE SENIOR NOTES TRUSTEE; (G) EACH CONSENTING STAKEHOLDER; (H) EACH HEDGE BANK; (I) EACH CASH MANAGEMENT BANK; (J) EACH LENDER UNDER THE SUPERPRIORITY CREDIT AGREEMENT, CREDIT AGREEMENT, THE 2021 LC AGREEMENT, AND THE LLOYDS LETTER OF CREDIT AGREEMENT; (K) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (L) EACH HOLDER OF AN OBLIGATION (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (M) EACH ISSUER (AS DEFINED IN THE SUPERPRIORITY CREDIT AGREEMENT) UNDER THE SUPERPRIORITY CREDIT AGREEMENT; (N) EACH ISSUER (AS DEFINED IN THE CREDIT AGREEMENT) UNDER THE CREDIT AGREEMENT; (O) THE TERM LOAN AD HOC GROUP, THE LIQUIDITY LENDER STEERING COMMITTEE, AND THE SENIOR NOTES AD HOC GROUP; (P) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT OR ARE DEEMED TO ACCEPT THE PLAN; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (R) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (S) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (R); AND (T) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R).

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE *THIRD-PARTY RELEASE* CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE BALLOT BY THE VOTING DEADLINE, (B) FILE AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE, OR (C) VOTE TO REJECT THE PLAN AND SUBMIT THE BALLOT BY THE VOTING DEADLINE. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

**By checking this box, you elect to opt <u>out</u> of the Third-Party Releases.Item 3.** Certifications.

By signing this Opt Out Form, the undersigned certifies:

(a) that, as of the Voting Record Date, either: (i) the Entity is the Holder of the Claim or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claim or Interests set forth in Item 1;

(b) that the Holder has received a copy of the *Notice of Non-Voting Status to Holders of (I) Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Impaired Claim Conclusively Presumed to Reject the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(a) that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(b) that no other Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | Michael D. Van Deelen |
| | (Print or Type) |
| Signature: | Michael D. Van Deelen |
| Name of Signatory: | |
| | (If other than holder) |
| Title: | N/A |
| Address: | 16215 Frian Circle |
| | Spring, TX 77379 |
| Telephone Number: | 832-562-0723 |
| Email: | michaelvandeelen@gmail.com |
| Date Completed: | 2/13/20 |

## PLEASE SUBMIT YOUR OPT OUT FORM BY ONE OF THE FOLLOWING TWO METHODS:

**Via Paper Form.** Complete, sign, and date this Opt Out Form and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:

McDermott Opt Out Form Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

Michael Van Deelen
16215 Frio Circle
Spring, TX 77379

McDermott Opt Out Form Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165



```
Address:            4656 FM 1960 RD W
                    HOUSTON
                    TX 77069
Location:           DWHK
Device ID:          ~BTC02
Transaction:        940256549995
```

FedEx Standard Overnight
- 390386463532    0.2 lbs. (S)        38.45
    Declared Value   100
Recipient Address:
    C/O Prime Clerk LLC
    McDermott Opt Out Form Processing
    60 East 42nd Street, Ste 1440
    One Grand Central Place
    New York, NY 10165
    0000000000

Scheduled Delivery Date 2/17/2020

Pricing option:
    ONE RATE

Package Information:
    FedEx Envelope

           Shipment subtotal:      $38.45

                  Total Due:       $38.45

            (S) CreditCard:        $38.45
          ************1248