UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**

JUN 0 4 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S EMERGENCY MOTION TO AMEND

**Emergency relief has been requested. A hearing will be conducted on this matter on June 7, 2021, at 11:00 am in Courtroom 400 , fourth floor, 515 Rusk, Houston, TX 77002.  You may participate in the hearing by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To**

connect, you should enter the meeting code "Judge Jones" in the GoToMeeting app or click the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically, if available, in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.

If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

Relief is requested not later than June 7, 2021.

COMES NOW, the Plaintiff, Michael Van Deelen, and pursuant to Fed. Rules Civ. Proc. Rule 15(a)(2), moves to amend his Plaintiff's First Amended Petition (Doc. 50) as follows:

1. Plaintiff seeks leave to remove Count 2, Negligent Misrepresentation, from his Plaintiff's First Amended Petition.

2. On March 10, 2021, the Court instructed Plaintiff to submit his Plaintiff's First Amended Petition containing only state law causes of action.

3.  Due to perceived ambiguities in Articles VIII and VIII.D of the Confirmation Plan, Count 2 may or may not violate the Exculpation and Injunction provisions of the Plan.  Accordingly, in an abundance of caution, plaintiff seeks to remove Count 2 from his Plaintiff's First Amended Petition in order to fully comply with the Court's March 10, 2021, instruction.

4.  The Court should feely give leave to amend when justice so requires. *Fed. Rules Civ. Proc. Rule 15(a)(2).*

5.  Exhibit A herein contains Plaintiff's Second Amended Petition which is identical to Plaintiff's First Amended Petition except for its deletion of Count 2, Negligent Misrepresentation.

WHEREFORE, Plaintiff moves to amend his Plaintiff's First Amended Petition to remove Count 2, Negligent Misrepresentation, from said Plaintiff's First Amended Petition.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of June, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.


/s/ Michael Van Deelen
Michael Van Deelen

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMOVE COUNT 2, NEGLIGENT MISREPRESENTATION, FROM PLAINTIFF'S FIRST AMENDED PETITION

The Court, having considered the Plaintiff's Motion to Amend, as well as the evidence

presented, finds that the Plaintiff's Motion to Amend be GRANTED. The Court:

ORDERS that the Plaintiff's Motion to Amend is granted.

_____
JUDGE
UNITED STATES BANKRUPTCY COURT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | Chapter 11 |
| | ) | |
| Reorganized Debtor(s). | ) | Case No. 20-30336 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF HEARING</u>

A hearing will be conducted on this matter on June 7, 2021, at 11:00 am in Courtroom 400 , fourth floor, 515 Rusk, Houston, TX 77002.  You may participate in the hearing by audio/video connection.

Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691.

You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "Judge Jones" in the

GoToMeeting app or click the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically, if available, in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.

If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

DATED: June 4, 2021

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

# EXHIBIT A

## CAUSE NO. 20-06-07348

| | | |
|---|---|---|
| MICHAEL VAN DEELEN | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | OF MONTGOMERY COUNTY, |
| | § | TEXAS |
| DAVID DICKSON, | § | |
| and STUART SPENCE, | § | |
| and SCOTT LAMB, | § | 284th JUDICIAL DISTRICT |
| and 10 JOHN/JANE DOES | § | |
| Defendants. | § | |

## <u>PLAINTIFF'S SECOND AMENDED PETITION</u>

COMES NOW Michael Van Deelen, plaintiff in the above-styled state law cause of action, and for his cause of action shows as follows:

(NOTE: This is a state law cause of action that was filed in state court but removed to Federal Court by the defendants. This Plaintiff's Second Amended Petition is also a state law cause of action which has been filed in response to the (Federal Bankruptcy) Court's instruction on March 10, 2021, to file an amended petition containing only state law claims as preparatory to having this case remanded to state court.)

## DISCOVERY CONTROL PLAN

1.  Plaintiff intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure 190.3.

## PARTIES

2.  Defendant Scott Lamb is an individual residing in Montgomery County, Texas, who can be served at his residence: 29 Watermill Ct, The Woodlands, Tx, 77380.  At all times material herein, defendant Lamb was McDermott International's Vice President of Investor Relations.

3.  Defendant David Dickson is an individual believed to be residing in either Montgomery County, Texas, or Harris County, Texas, who can be served at McDermott International, 757 N. Eldridge Pkwy, Houston, Tx, 77079.  At all times material herein, defendant Dickson was the President and Chief Executive Officer of McDermott International.

4.  Defendant Stuart Spence is an individual residing in Harris County, Texas, who can be served at his residence: 301 Hedwig Street, Houston, Tx, 77024.  At all times material herein, until 11/4/2019, defendant Spence was the Executive Vice President and Chief Financial Officer of McDermott International.

5.  The 10 John/Jane Doe defendants, if any, will be identified through the process of discovery.

## JURISDICTION AND VENUE

6.  This Court has personal jurisdiction over the defendants because they (a) have, at all material times, conducted business in Texas; (b) have committed tortuous actions, in whole or in part, in Texas; and (c) have sufficient minimum contact with Texas such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

7.  Plaintiff seeks monetary relief of $180,000.00, plus exemplary damages, and the damages sought are therefore within the jurisdictional limit of this Court.

8.  Venue is proper in Montgomery County, Texas, pursuant to Section 15.002(a)(2) of the TEX. CIV. PRAC. & REM. CODE because it was the residence of one or more of the defendants at the time plaintiff's causes of action accrued.

9.  The following is alleged on information and belief.


## FACTUAL ALLEGATIONS

**Defendants Dickson and Spence Have a History of Being Accused of Making Material Misrepresentations and Omissions in Their Communications to the Investing Public.**

10.  On November 15, 2018, a complaint was filed in the United States District Court for the Southern District of Texas seeking class action status on behalf of purchasers of McDermott International ("McDermott") common stock

and alleging damages on their behalf arising from McDermott's allegedly false and misleading statements during the class period from January 24, 2018, to October 30, 2018. The case is captioned *Edwards v. McDermott International, Inc., et al*, No. 4:18-cv-04330. The defendants in the case are McDermott; David Dickson, McDermott's President and CEO; and Stuart Spence, McDermott's Chief Financial Officer (who left McDermott on 11/4/2019). The plaintiff in that case has alleged that the defendants made material misrepresentations and omissions about the integration of the CB&I (Chicago Bridge and Iron) business, certain CB&I projects and their fair values, and McDermott's business, prospects and operations.

11. On January 14, 2019, a related action was filed in the United States District Court for the Southern District of Texas seeking class action status on behalf of all shareholders of McDermott common stock as of April 4, 2018, who had the right to vote on the McDermott/CB&I Combination, captioned: *The Public Employees Retirement System of Mississippi v. McDermott International, Inc., et al*, No.4:19-cv-00135. The plaintiff in that case has alleged the defendants, which include Mr. Dickson and Mr. Spence, made material misrepresentations and omissions in the proxy statement McDermott used in connection with the Combination. The court granted McDermott's motion to consolidate the two actions on February 22, 2019. The case is ongoing.

12. On July 26, 2019, the Securities and Exchange Commission ('SEC') sent a letter, accompanied by subpoenas, notifying McDermott International that it was under investigation for failing to properly disclose projected losses on its Cameron LNG (Hackberry) project (which was part of CB&I when McDermott acquired that company).

**Timeline of Events**

13. On May 10, 2018, McDermott completed its merger with Chicago Bridge and Iron ("CBI").  With this merger, McDermott inherited two CBI projects: the Cameron, Louisiana, LNG (liquefied natural gas) project and the Freeport, Texas, LNG project.  Each of these projects were fixed price projects, which meant that any cost overruns would be borne by McDermott.  Cost overruns, which McDermott internally projected to be in the hundreds of millions of dollars, began almost immediately, particularly at Cameron.  The projected cost overruns, though highly material, were not disclosed to plaintiff or the investing public by the defendants.

14. Not long thereafter, as seen below, the losses became so great that McDermott was running out of cash.  As seen below, the company, with the knowledge and at the direction of the defendants, decided in September, 2019, that its only alternative was to file for Chapter 11 bankruptcy.

15. Defendants Dickson and Spencer receive(d) the majority of their annual compensation in McDermott stock.  For example, defendant Dickson's total remuneration in 2018 exceeded $11 million, most of which came from stock awards, and defendant Spence's total 2018 remuneration was $3.6 million, most of which also came from stock awards.

16. If the very bad outlook for McDermott, including the projected losses from Cameron and Freeport and the company's plan to file bankruptcy, would have become known to the public, McDermott's share price would have fallen precipitously and defendants Dickson's and Spence's annual remuneration from stock grants would have all but evaporated.  To prevent this from happening, the defendants agreed on a scheme ("the scheme") to artificially inflate McDermott's share price by not disclosing the company's true financial condition and outlook, including material current and projected losses from the Cameron and Freeport projects and elsewhere, and the company's impending bankruptcy to plaintiff and the investing public.  (See below.)

17. Defendants Dickson, Spence and Lamb were equal participants in the scheme and they each approved all actions taken by each other pursuant to the scheme.  Pursuant to the scheme, the defendants intentionally or negligently committed the following acts in order to maintain McDermott's share price at an artificially high, inflated, level it would not have been at had the material

misrepresentations and omissions concerning the company's financial condition
and outlook not been made.

18.  On March 22, 2019, the defendants, in concert with one another and in
furtherance of the scheme or through negligence, published a letter to the
company's website.  The letter, viewed by the plaintiff on or about April 3, 2019,
contained material misrepresentations and omissions concerning McDermott's
financial condition and outlook.  For example:

"Today, we are a fundamentally different and much larger company, as
compared to where we were at the end of 2017, with a formidable new presence in
significant onshore markets."

"Thanks to the tremendous amount of hard work and dedication of our
Board, executive management and employees during 2018, we are ahead of
schedule in becoming a premier, fully integrated, global engineering, procurement,
construction and installation ("EPCI") provider, with product solutions spanning
onshore and offshore from concept to commissioning."

"Looking forward to 2019, our end markets are growing.  We are continuing
to see recovery in the offshore and subsea, LNG and downstream markets, with the
highest McDermott revenue opportunity pipeline in our history.  Today,
McDermott is well-positioned to offer the technology-led, vertically-integrated
solutions that we know our customers are seeking.  We believe that McDermott

has the right strategy in place to play a major role in the next chapter of global energy solutions."

19. At the time the letter was published, the defendants were aware that McDermott's Cameron LNG project was in trouble and had estimated probable losses of over $1 billion (approximately $3.50 per share). Although the projected losses were highly material, they were hidden from plaintiff and the investing public so that the defendants could continue to receive vast remuneration through stock grants at inflated stock prices.

20. On April 29, 2019, McDermott released its first quarter 2019 report, which was posted on the company's website and read by the plaintiff on or about May 6, 2019. The report, written, reviewed and approved by the defendants in concert with one another and in furtherance of the scheme or through negligence, materially overstated the results the company had achieved as well as its outlook. In part, the report stated:

"More broadly, the company continues to exhibit commercial success in a steadily improving market. In particular, McDermott reported a book-to-bill ratio of 3.0x, a new award total of $6.7 billion and a 41% sequential-quarter improvement in backlog."

21. The report released McDermott's full-year 2019 earnings guidance, which predicted strong second-half 2019 results. The guidance predicted that McDermott's full year earnings per share would be $.90

22. Nowhere in the first quarter report or the full-year guidance were public investors informed of the significant losses being accrued by the company's Cameron LNG project. In furtherance of the scheme or through negligence, these losses were not included in the first quarter results or in the full-year projections.

23. McDermott held its annual meeting on May 2, 2019. All reports, slides and presentations given at the meeting were reviewed and approved in advance of the meeting by the defendants in concert with one another and in furtherance of the scheme or through negligence. The meeting presentation was included on McDermott's website and was viewed by plaintiff on or about May 15, 2019. The meeting continued the false good-news reporting that had taken place in prior months. For example, the company showed a slide which stated:

"Post-Combination, McDermott is a fundamentally different and much larger company as compared to where we were in 2017, with significant earnings potential."

24. The slide showed dramatic increase in revenues, backlog and order intake from the prior year.

25.  At no time during the meeting were plaintiff or the investing public informed of the significant losses being accrued by the company's Cameron LNG project.  In furtherance of the scheme or through negligence, these losses were not discussed during the meeting by the defendants or in any report, slide or presentation given during the meeting.

26.  In July, 2019, just two months after the company's annual meeting, the Securities and Exchange Commission ('SEC') sent McDermott a letter, accompanied by subpoenas, notifying the company that it was under investigation for failing to properly disclose projected losses on its Cameron LNG project. Although the investigation was highly material, the defendants, in concert with one another and in furtherance of the scheme or through negligence, did not disclose the investigation to plaintiff or the investing public.

27.  In July, 2019, McDermott undertook a study (the "Financing Case") the purpose of which was to consider its options, including declaring bankruptcy, as the result of the massive losses being incurred at the Cameron and Freeport projects which were draining the company's cash and impacting its loan covenants. The defendants, in concert with one another and in furtherance of the scheme or through negligence, did not disclose this highly material study or the mounting Cameron and Freeport losses to the plaintiff or the investing public.

28. The "Financing Case" was undertaken because McDermott was being forced by the SEC investigation to start recognizing and reporting the huge losses that had been accruing on the Cameron LNG project.

29. On July 29, 2019, in order to placate and fend off the SEC, McDermott released its second quarter 2019 results which unexpectedly showed the company lost $146 million during second quarter 2019 versus a net income of $47 million during the prior year period. The second quarter 2019 report was published on McDermott's website and was read by plaintiff on or about July 29, 2019. In addition, the company reduced its full year guidance which now predicted the company would **lose** $1.65 per share instead of making $.90 a share in 2019, a negative swing of $2.55 a share from the first quarter, 2019, guidance. The losses and reduced earnings projections were the result of the recognition of past and present Cameron (and to a lesser extent, Freeport) losses which had been known by the defendants but not previously reported, as noted herein.

30. On July 29, 2019, the defendants, acting in concert with one another and in furtherance of the scheme or through negligence, issued a statement (as part of the second quarter, 2019, report) on McDermott's website, read by the plaintiff on or about July 29, 2019, that operating income was going to achieve a "sharp improvement" during the fourth quarter of 2019. The company's anticipated

improvement was therefore shifted by the defendants from second-half 2019 to fourth quarter 2019.

31. In the statement, defendant Dickson, acting in concert with the other defendants and in furtherance of the scheme or through negligence, omitted material information that McDermott faced significant difficulty in the months ahead, including impending earnings, cash flow, loan covenant and potential bankruptcy problems. To the contrary, defendant Dickson stated that:

"Although the company reported mixed results for the second quarter of 2019, we are encouraged by the record-setting level of backlog and new awards. We are also pleased with the visibility we have into expected 2020 revenues, of which $7.4 billion was already in backlog as of the end of the second quarter of 2019. This is well above the $4.2 billion of 2019 revenues we had in backlog this time last year. This strong market posture continues to demonstrate the benefits of our combination with CB&I and the opportunities available in a strong market environment. McDermott has booked more than $19 billion of awards since the May 2018 combination with CB&I, demonstrating continued customer confidence and healthy end markets. Importantly, as of the end of the second quarter of 2019, legacy CB&I projects represented only about 14% of the current backlog. All the awards we've won since the combination were booked under McDermott's stringent risk management protocols, which we believe pave the way for us to deliver consistent margin performance through the application of the One McDermott Way in the execution of this backlog. The company continues to remain on schedule executing the Cameron and Freeport LNG projects. The Cameron settlement agreement we signed earlier this month is a testament to the mutually productive relationship we have built with this customer since the combination – and the associated incentives provided a meaningful contribution to our second quarter results."

"...we expect to see a sharp improvement in the company's operating income by the fourth quarter of this year, as we build momentum heading into 2020."

"Looking ahead, our revenue opportunity pipeline remains near a historic high and, more specifically, we are seeing steady upward momentum in a number of key

areas. For example, in the strategic area of front end engineering design (FEED), our awards through the first half of 2019 are already more than double what we won in all of 2018 – in terms of both man-hours and dollar value – and that's especially important as FEED work positions us for EPC opportunities. This year we have booked $1.5 billion of EPC work as a result of FEED work that's been done since the combination. Further, in our Technology business, we are forecasting the number of license sales to increase by 25% this year versus 2018. One of the recent highlights was our selection as the Master Licensor by S-OIL, an affiliate of Saudi Aramco, in support of its ethylene cracker and downstream petrochemicals complex, being developed as a major expansion of S-OIL's existing refinery in South Korea. Our Technology business gives us unparalleled insight into upcoming EPC opportunities, and we see roughly $40 billion of potential EPC pull-through opportunities in the refining and petrochemical markets over the next five years. We believe the petrochemical market, in particular, is poised for another wave of investment in the next 12 to 24 months, with world ethylene capacity expected to increase by more than 40% between 2019 and 2028."

32.  Nowhere in their statement did the defendants alert plaintiff or the investing public to the fact that McDermott had already begun a material analysis (the "Financing Case") designed to consider a change in the capital structure of the company, including bankruptcy, as discussed herein.  And nowhere in the July 29, 2019, second quarter report did the defendants alert plaintiff or the investing public to the material fact that they were aware that the Cameron LNG project, and other legacy projects as well, were going to continue experiencing substantial losses in the months ahead which would cause the company to incur huge losses, a cash flow drain and loan covenant problems.

33.  On August 2, 2019, after having read the defendants' false representations mentioned herein, and not being aware of the defendants' material omissions, plaintiff became convinced that the share price decline that resulted

from the second quarter loss was a buying opportunity given the defendants'

projections for substantial earnings improvement in the fourth quarter of 2019.

Plaintiff, relying on the defendants' false representations, accordingly purchased

22,000 shares of McDermott International common stock at a combined cost of

$139,322.28.  Had the defendants disclosed the material information that the

company was going to continue experiencing massive losses at its Cameron and

Freeport facilities, that the company was in dire need of working capital, that it had

or was about to violate its loan covenants, that it had undertaken a study (the

Financing Case) to stave off bankruptcy, that bankruptcy was a very real

possibility in the near term and that the company was under SEC investigation for

failing to properly disclose projected losses and had the defendants not

intentionally materially overstated the company's projected results as discussed

herein, plaintiff would not have purchased or held the stock.

    34.  The Financing Case analysis was concluded on or about September 16,

2019, and the company immediately made the decision to declare Chapter 11

bankruptcy.  (At the company's Chapter 11 bankruptcy plan confirmation hearing

in the U.S. District Court for the Southern District of Texas, Southern Division, on

March 12, 2020, John R. Castellano, Chief Transformation Officer for McDermott

and a company insider with intimate knowledge of the decision-making process,

testified that the company decided in mid-September, 2019, to declare Chapter 11

bankruptcy.)  The decision to declare bankruptcy was made just seven weeks after

the defendants' July 29, 2019, effusive second quarter comments, including

defendant Dickson's comment that

*"...we expect to see a sharp improvement in the company's operating income by the
fourth quarter of this year, as we build momentum heading into 2020."*

It is unbelievable that the defendants were not aware of the massive difficulty the

company was in when they, in concert with one another and in furtherance of the

scheme or through negligence, made their July 29, 2019, statement that the

company was doing great and operating income would see a "sharp  improvement"

by the fourth quarter of 2019.

35.  The defendants, acting in concert and in furtherance of the scheme or

through negligence, failed to inform plaintiff or the investing public in mid-

September, 2019, that the decision had been made to declare bankruptcy.

However, rumors began to fly and the company's share price declined from $6.08

on September 16, 2019, immediately before the rumors, to $2.16 on September 18,

2019, after the rumors came out.

36.  On September 18, 2019, in order to stem the share price decline, the

defendants, acting in concert and in furtherance of the scheme or through

negligence, issued a terse press release (read by plaintiff on or about September 18,

2019) stating that:

"McDermott International, Inc., routinely hires external advisors to evaluate opportunities for the Company. The Company is taking positive and proactive measures, as we have done in the past, intended to improve its capital structure and the long-term health of its balance sheet."

37. The defendants, acting in concert and in furtherance of the scheme or through negligence, made no mention in their press release of the highly material fact that the company had already decided to declare bankruptcy. Instead, they attempted to deceive the plaintiff and the investing public that everything that was happening at the company was "routine". The defendants, acting in concert and in furtherance of the scheme or through negligence, dismissed the prospect of a bankruptcy filing as "rumor or speculation" in subsequent communications with plaintiff and the investing public even though they were aware that the company had already decided to file for Chapter 11.

38. On September 20, 2019, the defendants, acting in concert and in furtherance of the scheme or through negligence, issued a press release (read by plaintiff on or about September 20, 2019) stating that the company had hired Evercore to help it sell its Lummus Technology division in order to strengthen the company's balance sheet. **The press release made no mention of the highly material fact that the company had already decided to declare bankruptcy.** The defendants and their agents have subsequently testified that there was never a plan for the out-of-court sale of Lummus Technology to strengthen McDermott's balance sheet.

39.  The press release sets forth, in part, as follows:

"HOUSTON, Sept. 20, 2019 /PRNewswire/ -- McDermott International, Inc.
(NYSE: MDR) today *announced it recently received unsolicited approaches to
acquire all or part of Lummus Technology, McDermott's industry-leading
technology business, with valuation exceeding $2.5 billion. Based on the receipt of
these approaches, McDermott is exploring strategic alternatives to unlock the
value of Lummus Technology while maintaining the strategic rationale of
engineering, procurement and construction (EPC) pull-through.* [Emphasis
added.]

McDermott's Lummus Technology is a leading licensor of proprietary
petrochemicals, refining, gasification and gas processing technologies, and a
supplier of proprietary catalysts and related engineering. With a heritage spanning
more than 100 years, encompassing approximately 3,100 patents and patent
applications, Lummus Technology provides one of the industry's most diversified
technology portfolios to the hydrocarbon processing sector.

'Lummus is an excellent business, with incredibly impressive employees, that has
earned a reputation for expertise, innovation and reliability in the refining and
petrochemical industries,' said David Dickson, President and Chief Executive
Officer of McDermott. *"The process of exploring strategic alternatives is part of
our ongoing efforts intended to improve McDermott's capital structure, and we
plan to use the proceeds from any transaction involving Lummus Technology to
strengthen our balance sheet. While Lummus is an important business within
McDermott, we have decided to undertake a process to fully realize its strategic
and financial value."* [Emphasis added.]

Separately, McDermott's previously announced processes to sell the remaining
portion of its pipe fabrication business and its industrial storage tank business are
ongoing."

40.  This disclosure regarding the unsolicited approaches to acquire Lummus

and that McDermott would use the proceeds from any Lummus transaction to

strengthen its balance sheet was well received by the market.  Zephirin Group

analyst Lenny Zephirin said the offer is "salivating" and, if accepted, should allow

the company to reduce leverage by about $1.2 billion. See A. Sarkar, "McDermott

International gets takeover interest for its Lummus Technology unit", Reuters,

Sept. 20, 2019, available at https://www.reuters.com/article/us-mcdermott-

international-strategic-alt/mcdermott-international-gets-takeover-interest-for-its-

lummus-technology-unit-idUSKBN1W51AC.  Credit Suisse analysts, who called

Lummus the "crown jewel" of McDermott, said the valuation is reasonable given

historic transactions in the space, and that the deal could happen in early 2020. Id.

Following the disclosure, the price for McDermott common stock spiked 50% in

premarket trading on September 20 and closed at $2.01 per share, up 27.22%.

41. The September 20 press release and Defendant Dickson's statements

therein, however, were materially misleading. There was not any near-term plan

for a Lummus transaction to strengthen the company's balance sheet. The

statements were merely part of the defendants' scheme to artificially inflate the

price of McDermott common stock while providing the company time to develop

and execute on a prepackaged Chapter 11 restructuring plan **which it was already

working on**.

42. John R. Castellano, AlixPartners Managing Director and Chief

Transformation Officer for McDermott, in testimony before the bankruptcy court

during the March 12, 2020, bankruptcy hearing *stated that when he began working*