**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

In re:

MCDERMOTT INTERNATIONAL, INC., *et al.*,

    *Debtors.*

MICHAEL VAN DEELEN,

    *Appellant,*

v.

DAVID DICKSON, STUART SPENCE,
SCOTT LAMB, JOSHUA SUSSBERG, and
10 JOHN/JANE DOES,

    *Appellees.*

On appeal from the U.S.
Bankruptcy Court for the
Southern District of Texas

Bankruptcy No. 20-30336

Adv. Proc. No. 20-3309

Appeal No. 4:21-cv-3369

## ORDER

This appeal arises from events that occurred before, during, and after the bankruptcy of

McDermott International, Inc. ("McDermott"). Appellant Michael Van Deelen ("Van Deelen" or

"Appellant") was a stockholder in McDermott. Appellees David Dickson, Stuart Spence, and Scott

Lamb (referred to individually as "Dickson", "Spence", and "Lamb" or jointly as the "McDermott

Appellees") are either current or former employees of McDermott. Appellee Joshua Sussberg

("Sussberg") is an attorney that represented McDermott in its bankruptcy proceedings.

Van Deelen, acting *pro se*, was an active participant throughout McDermott's bankruptcy.

In fact, he appeared at the confirmation hearing and opposed the confirmation of the plan for

reorganization (the "Plan"). Ultimately, Van Deelen's objections to the Plan were overruled and

the Plan was confirmed. The apparent effect of that order was that Van Deelen's equity interest in McDermott became worthless. Van Deelen did not appeal the confirmation order.

Instead, in June of 2020, Van Deelen filed a lawsuit in state court against the McDermott Appellees in Montgomery County, Texas. (*See* Adv. 20-3309, Doc. No. 1). His claims were based on alleged pre-bankruptcy activities taken by McDermott and Dickson, Spence, and Lamb while they were employees of McDermott as well as activities that occurred during the pendency of the bankruptcy proceedings.

The McDermott Appellees removed the case to federal court and claimed that the allegations were barred by prior orders of the bankruptcy court.[1] Van Deelen moved to have the case remanded back to state court, claiming the bankruptcy court lacked jurisdiction because his claims were based upon state law. (Adv. 20-3309, Doc. No. 4). Alternatively, he asked that the bankruptcy court abstain from ruling.

The McDermott Appellees responded that the bankruptcy court had jurisdiction and that abstention was inappropriate. (*Id.*, Doc. No. 11). The McDermott Appellees also moved to have Van Deelen's claims dismissed, contending they were barred by the exculpation and release provisions of the confirmation order and/or that Van Deelen's fraud pleadings were inadequate. (*Id.*, Doc. No. 5). Van Deelen also sought to recuse Bankruptcy Judge David Jones in the current matter based on what he contended was inappropriate or biased conduct in the prior McDermott bankruptcy proceedings. (*Id.*, Doc. No. 8).[2] This latter motion was heard by Bankruptcy Judge Marvin Isgur, who ultimately denied the motion to recuse. (*Id.*, Doc. No. 42).

---

[1] While Van Deelen has questioned the propriety of the removal, no party has questioned or briefed whether removal was the proper mechanism to get the issue before the bankruptcy court. That being the case, this Court finds no need to address the actual mechanics of bringing the case before the bankruptcy court. Certainly, other cases have been removed in a similar fashion. *See e.g.*, *In re ABC Dentistry, P.A.*, 2019 WL 6894775 (S.D. Tex. Dec. 17, 2019).

[2] No party has questioned whether a judge's conduct in a prior proceeding (the results of which were not appealed by anyone involved here) could be used as a basis for recusal in a subsequent proceeding. That being the case, the Court will assume Van Deelen's recusal motion in this case was not untimely or procedurally barred and that the alleged

Thereafter, the bankruptcy court held a scheduling conference. At that hearing, the judge cautioned Van Deelen that his state court claims, as pleaded, may be problematic given the McDermott confirmation order and then gave him the opportunity to amend his petition. In response, Van Deelen filed an amended petition. (*Id.*, Doc. No. 50).

Nevertheless, the First Amended Petition still contained allegations of fraud and misrepresentations (under the label of negligent misrepresentation) related to the actions of McDermott and its employees before, leading up to, and during the bankruptcy. That being the case, the McDermott Appellees renewed their motion to dismiss (*Id.*, Doc. No. 51), again claiming the pleadings were either insufficient or were barred by prior bankruptcy orders. Van Deelen responded that: 1) he opted out of the complained-about provisions; 2) the bankruptcy court lacked jurisdiction; and 3) the bankruptcy court ought to abstain. (*Id.*, Doc. No. 52). The McDermott Appellees replied by pointing out the opt-out provisions only applied to the third-party release provisions—not the exculpation clauses in the Plan—and argued that the bankruptcy court had jurisdiction and should not abstain. The McDermott Appellees also reiterated their complaint about the insufficiency of the fraud pleadings. (*Id.*, Doc. No. 53).

Almost immediately thereafter, Van Deelen filed a motion to remove his negligent misrepresentation claims. (*Id.*, Doc. No. 54). The court held another hearing and gave Van Deelen yet another opportunity to replead, which he did by filing a Third Amended Petition. (*Id.*, Doc. No. 57). In that Third Amended Petition, Van Deelen dropped the negligent misrepresentation claim, but kept his fraud contentions.[3] He also added fraud and assault-related claims against

---

acts or omissions in the original bankruptcy matter about which Van Deelen complains can be used as a basis for a motion to recuse in the instant case.

[3] The Second Amended Petition was attached as an exhibit to the Emergency Motion to Amend. (Adv. 20-03309, Doc. No. 54). Since the court subsequently granted Van Deelen's motion to amend, the court never appears to have granted leave to file this Second Amended Petition. Consequently, the operative petition changed from the First Amended Petition to the Third Amended Petition when that was later filed. (*Id.*, Doc. No. 57). These "complaints," even those

Sussberg. These latter allegations primarily involved interactions that allegedly took place in or just outside of the bankruptcy courtroom during the March 12, 2020, confirmation hearing. The McDermott Appellees once again responded with a motion to dismiss. (*Id.*, Doc. No. 60). Sussberg filed his own motion to dismiss along with a motion for sanctions. (*Id.*, Doc. No. 59). Van Deelen timely responded in opposition. (*Id.*, Doc. No. 63). Ultimately, before the court ruled, Van Deelen filed a motion to dismiss all of his claims against Sussberg. (*Id.*, Doc. No. 75).

When the bankruptcy court ruled, it addressed all the pertinent motions in the same order. (*Id.*, Doc. No. 81). It granted Sussberg's motion to dismiss but denied without prejudice Sussberg's motion for sanctions. It denied Van Deelen's motion to remand or abstain, and granted the motion to dismiss filed by Dickson, Spence, and Lamb. (*Id.*).

Van Deelen has now appealed these primary rulings to this Court, including the decision by Judge Jones not to abstain or remand the claims back to state court for lack of jurisdiction. Additionally, he has included in this appeal the ruling made by Judge Isgur on the motion to recuse Judge Jones.[4] The Court will address jurisdiction first.

**I.     Jurisdiction**

As stated above, the instant dispute arose from a matter that Van Deelen filed in state district court in Montgomery County, Texas after the McDermott confirmation order had been entered. In that case, he sued Dickson, Spence, and Lamb for pre-bankruptcy acts he alleged were fraudulent in connection with the manner in which McDermott was managed up to and including the decision to file bankruptcy. He also complained about acts or omissions that occurred during the bankruptcy. The Court will initially use Plaintiff's Original Petition as its guide since it was

---

filed in federal court, were labeled "petitions" by Van Deelen throughout this case; thus, the use here of state court nomenclature. This fact may cause some confusion as the docket sheet labels them as "complaints."

[4] Van Deelen also complains that the bankruptcy court should not have sealed certain matters.

4

the live pleading in the case at the time of removal, and since it is generally held that a removal should be judged by the petition on file at the time; however, even the allegations in the Third Amended Petition implicate the decision to file the bankruptcy and the conduct during the bankruptcy proceedings. *See e.g., Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 73 (1996) (in a removal based upon diversity); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000) (once jurisdiction is established, subsequent events do not deprive the court of jurisdiction).

In his Original Petition, Van Deelen alleged that Dickson, Spence, and Lamb, and additional unknown individuals, were guilty of conversion (by cancelling shareholders' equity through the bankruptcy), common law and statutory fraud (for false statements that misled investors as to the true financial condition of McDermott), negligent misrepresentation, breach of fiduciary duty, and conspiracy. In that pleading it is clear that some of the alleged acts or omissions of the defendants must have been performed in the course and scope of their employment at McDermott. Otherwise, it is unlikely that Van Deelen would have a viable cause of action against them.[5] It is also clear that some of the alleged acts or omissions occurred during the bankruptcy proceedings.

Even a cursory review of the Original Petition reveals that some of its claims are in conflict with the terms of the confirmation order. That order contains the following exculpation clauses:

52. Except as otherwise specifically provided in the Plan or this Confirmation Order, **no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Claims and Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination** of the Restructuring Support Agreement and related prepetition transactions (including

---

[5] The Court emphasizes this fact here because in the Original and First Amended Petitions, Van Deelen alleges that the McDermott Appellees owed him a fiduciary duty to make full and complete disclosures while employed by McDermott, yet in the Third Amended Petition, (Adv. 20-3309, Doc. No. 57), Van Deelen specifically disclaims any contention that Spence, Lamb, or Dickson were acting in the course and scope of their employment. This change of direction becomes especially important when one considers the sufficiency of the pleadings—a topic discussed below.

the Superpriority Credit Agreement, the Credit Agreement, the Senior Notes
Indenture or Senior Notes, the 2021 LC Agreement, and the Lloyds Letter of Credit
Agreement), the Disclosure Statement, the Plan, the DIP Credit Facility, the Exit
Facility Documents, the New Warrants Agreements, the Plan Supplement, the
Rights Offering, or any Restructuring Transaction, contract, instrument, release or
other agreement or document (including any legal opinion requested by any Entity
regarding any transaction, contract, instrument, document or other agreement
contemplated by the Plan or the reliance by any Released Party on the Plan or this
Confirmation Order in lieu of such legal opinion), including any Definitive
Document, created or entered into before or during the Chapter 11 Cases, any
preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter
5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11
Cases, the pursuit of Confirmation, the pursuit of Consummation, the
administration and implementation of the Plan, including the issuance or
distribution of Securities pursuant to the Plan, or the distribution of property under
the Plan or any other related agreement, or upon any other related act or omission,
transaction, agreement, event, or other occurrence taking place on or before the
Effective Date, **except for claims related to any act or omission that is
determined in a Final Order by a court of competent jurisdiction to have
constituted actual fraud, willful misconduct, or gross negligence**, but in all
respects such Entities shall be entitled to reasonably rely upon the advice of counsel
with respect to their duties and responsibilities pursuant to the Plan.

53. The Exculpated Parties and other parties set forth above have, and upon
confirmation of the Plan shall be deemed to have, participated in good faith and in
compliance with the applicable laws with regard to the solicitation of votes and
distribution of consideration pursuant to the Plan and, therefore, are not, and on
account of such distributions shall not be, liable at any time for the violation of any
applicable law, rule, or regulation governing the solicitation of acceptances or
rejections of the Plan or such distributions made pursuant to the Plan.

(Bk. 20-30336, Doc. No. 684, Confirmation Order ¶¶ 52-53) (emphasis added).

The confirmation order not only includes exculpation clauses, but it also includes various

release provisions. It is important to note the difference. Releases "provide for the relinquishment

of claims held by the debtor or third parties against certain nondebtor parties; by contrast,

exculpation clauses establish the standard of care that will trigger liability in future litigation by a

non-releasing party against an exculpated party for acts arising out of a debtor's restructuring." *In

re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 501 (Bankr. S.D. Ohio 2021) (citing

*Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084 (9th Cir. 2020)). The parties, however, now seem

to be in agreement that the release provisions of the confirmation order have no application here because Van Deelen "opted out."

Exculpation clauses, on the other hand, are often contained in Chapter 11 plans. The purpose of an exculpation clause is to protect, among others, the debtors, the committee and its members, the lenders, as well as employees, directors, agents, professionals, and affiliates of those parties. *Id.* at 500. They are necessary to eliminate subjecting individuals to second guessing and to allow parties to engage in the give and take of the bankruptcy process without fear of subsequent litigation. *Id.* at 501.

Van Deelen claims that, despite his pleadings, the bankruptcy court lacked jurisdiction because his "suit is not related to the bankruptcy case" and concludes therefore that the "bankruptcy court does not have jurisdiction to hear it." (Civ. A. 21-3369, Doc. No. 12 at 29). Appellees, unsurprisingly, come to the opposite conclusion.

A cursory review of the very first cause of action pleaded by Van Deelen demonstrates his attempt to assert a claim contrary to the confirmation order. His claim for conversion states in part:

> 68. The conversion included, but was not limited to, unnecessarily writing down goodwill and intangible assets for no other purpose than destroying shareholder equity in advance of a planned, but unannounced, bankruptcy filing; **unnecessarily declaring Chapter 11 bankruptcy for no other purpose than enriching defendant Dixon and other company insiders; announcing that the company was going to cancel the stock of plaintiff and other shareholders in connection with the unnecessary Chapter 11 bankruptcy; and chilling plaintiff from exercising his rights as a shareholder to contact company management and other personnel by asking the bankruptcy court to prevent plaintiff from doing so.**

(Adv. 20-3309, Doc. No. 1 at 31) (emphasis added).[6]

---

[6] Clearly, a common law conversion claim as pleaded did not meet the actual fraud, willful misconduct, and gross negligence exception of the exculpation clause—neither did Van Deelen's causes of action for negligent misrepresentation and breach of fiduciary duty.

7

Bankruptcy courts have jurisdiction to hear: 1) cases under Title 11, 2) core proceedings arising under Title 11, 3) core proceedings "arising in" a case under Title 11, and 4) non-core proceedings related to a case under Title 11. 28 U.S.C. § 1334(b). Core proceedings are generally outlined in 28 U.S.C. § 157(b)(2). This Court finds this to be a core proceeding because one of the prior litigants in the bankruptcy proceeding is attempting to follow a course of action contrary to the McDermott confirmation order. 28 U.S.C. § 1651(a).

Moreover, bankruptcy courts "retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders...." *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009). The Supreme Court has long held that a bankruptcy court has jurisdiction to interpret and enforce its own orders. *See e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195 (2009). These claims go to the essence of the bankruptcy and are in direct conflict with the exculpation relief in the confirmation order. Core proceedings are those that involve a substantive right provided by Chapter 11 or those that could only arise in the context of a bankruptcy case. A suit that purports to sue exculpated parties for protected conduct in the face of, and directly contrary to, a confirmation order is just such a proceeding. Clearly, Van Deelen's claims, as quoted above, attack pre-bankruptcy conduct leading up to and including its filing and conduct that allegedly occurred during the actual bankruptcy proceedings. As such, this case presents a core proceeding and the bankruptcy court properly exercised jurisdiction. There may be permissible claims against some in the face of this exculpation clause, but conversion by virtue of the final effect of the confirmation order is not one.

Van Deelen argues that this case does not constitute a core proceeding. Nevertheless, even if one categorized this matter as falling under the "related to" provision, the bankruptcy court could

8

still have jurisdiction. Post-confirmation disputes that concern non-core issues do not always present a matter over which the bankruptcy court has jurisdiction. A bankruptcy court retains post-confirmation jurisdiction in non-core, related-to instances unless the dispute falls under the three-part test set out by the Fifth Circuit in *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388 (5th Cir. 2001). A review of the issues in dispute here leads one to the conclusion that, even if one were to categorize these claims as "non-core," they would not fall under the umbrella of *Craig's Stores* as argued by Appellant. In *Craig's Stores*, the Fifth Circuit wrote extensively on post-confirmation jurisdiction and set out that bankruptcy jurisdiction ceases if: 1) the claims arise primarily from post-confirmation conduct; 2) no claims or controversies existed at the time of confirmation; *and* 3) no facts or law derived from the bankruptcy are necessary to resolve the claims. *Id.* at 390 (emphasis added); *see also*, *In re Enron Corp. Sec.*, 535 F.3d 325 (5th Cir. 2008). All of these factors favor the exercise of jurisdiction in this case. First, all of the alleged misconduct, regardless of the cause of action in question, is either based upon pre-bankruptcy acts or omissions or on conduct that occurred during the bankruptcy proceeding itself. Second, all of the claims were known at the time the confirmation order was issued. Finally, as seen in the above-quoted conversion claim, facts and circumstances that occurred during the bankruptcy which, in effect, wiped out the value of Appellant's stock, are at the heart of the claim. Thus, even if considered a non-core matter, under the test set out in *Craig's Stores*, the bankruptcy court retained jurisdiction to resolve the matter.

As such, it is clear that the bankruptcy court had jurisdiction, and there was no reason to remand this matter to state court.

## II.    Abstention[7]

Van Deelen claims that even if the bankruptcy court had jurisdiction, it should have abstained from proceeding to resolve the contested issues. As a concept, abstention is traditionally divided into one of two categories: mandatory and permissive. Mandatory abstention is, as the name implies, one that courts must honor. To be successful on a motion asserting mandatory abstention, one must show that: 1) the claim has no independent federal jurisdiction; 2) the claim is a non-core proceeding; 3) an action had been commenced in state court; *and* 4) that it could be timely adjudicated in state court. *In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007). The movant bears the burden of proof on each of the four requirements, and a party seeking abstention must show all four elements to prevail. *In re Montalvo*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016).

Here, the movant only clearly prevails on the third point. Before removal, the Montgomery County matter was pending in state court; however, no substantive activity had taken place. Moreover, there was no indication of when the state court would take any action, nor was there a trial set or any other indicia of court activity whereby one could conclude that the case would be timely resolved. Most importantly, given Appellant's conversion, breach of fiduciary duty, and negligent misrepresentation causes of action, as demonstrated above, this case had independent federal jurisdiction because the only place these claims could or should have been filed was in the bankruptcy court—along with a request for relief from the exculpation clause. Therefore, the Appellant failed to carry his burden on the first element. Additionally, the Appellant has not shown that the matters in question are non-core proceedings, so he fails on that element as well. The only element Van Deelen clearly prevails on is the fact a state court case was filed. Finally, this Court

---

[7] This Court notes at the onset that once the case was removed, the hypothetical and literal result of the bankruptcy court merely abstaining from a ruling on the pending motions would have been that this lawsuit would have just remained as a docketed bankruptcy matter sitting in limbo for the indefinite future.

notes that the overriding principle that applies is that mandatory abstention would be inappropriate if the pursuit of the matter in state court violated the confirmation order which as pleaded it surely did.

Permissive abstention is less stringent. It may be exercised when it is in the interest of justice, or for purposes of comity with state courts and/or out of respect for state law. 28 U.S.C. § 1334(c)(1). In this area, courts have considered various factors. When evaluating whether to exercise permissive abstention, the court in *In re SBMC Healthcare, LLC* set out a number of those factors that might be considered. 519 B.R. 172 (Bankr. S.D. Tex. 2014), *aff'd*, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017). They include:

1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficult or unsettled nature of applicable law;

4) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding;

5) the jurisdictional basis, if any, other than § 1334;

6) the degree of relatedness or remoteness from a proceeding to the main bankruptcy case;

7) the substance rather than the form of an asserted core proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to bankruptcy court;

9) the burden on the bankruptcy court's docket;

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial;

11

12) the presence in the proceedings of nondebtor parties;

13) comity; and

14) the possibility of prejudice to other parties in the action.

*Id.* at 190.

A review of these factors does not suggest the bankruptcy court's decision to proceed was in error. First, abstention would clearly affect the efficient administration of the estate. Second, while Van Deelen pleaded state law causes of action in his Original Petition, the fact that the very first cause of action is directly contrary to the confirmation order results in a conclusion that federal law predominates. Third, there does not appear to be a difficult or unsettled issue of state law. The Texas law regarding conversion, fraud, statutory fraud, negligent misrepresentation, breach of fiduciary duty, and conspiracy is well-settled and easily applied by any federal court. Fourth, prior to Van Deelen filing in Montgomery County, there was not a pending action in state court. Fifth, there was a separate jurisdictional basis for Van Deelen's lawsuit. Sixth, the claims are clearly not remote from the bankruptcy case. Seventh, the substance goes directly to the interpretation of the exculpation clause and thus has all the trappings of a core proceeding. As one can see, if one considers the first seven factors alone, the Appellant prevails only on the fifth.

When one reviews the next seven factors, Appellant fairs only slightly better. The matter presented no significant burden on the bankruptcy court's docket. While the Appellees clearly wanted the bankruptcy court to interpret its own order, there is no claim of forum shopping in the classic sense, as the only forum that should decide the effect of the confirmation order is the bankruptcy court that issued it. All of the parties were either present or former employees or officers of the Debtor or participants in the bankruptcy proceedings. The state court has no significant interest that suggests the bankruptcy court should invoke the concept of comity. Finally,

there are no other parties (other than the Appellant and the McDermott Appellees) in the state court proceeding that could be affected. Thus, Van Deelen still comes up short on factors nine, ten, twelve, thirteen, and fourteen.

As noted, while some of these factors might favor abstention, most do not. Moreover, the fact that the bankruptcy court found, as this Court finds, that some of the claims made in state court, if successful, would violate the confirmation order, the factors favoring proceeding with the case predominate over the factors favoring abstention. The bankruptcy court did not abuse its discretion in proceeding.

## III.    Dismissal of the Fraud Claims

As stated above, when the dismissal order was entered, the operative petition was the Third Amended Petition. In summary, the pleading history reveals that, once the case was docketed in the bankruptcy court, Appellant was given multiple chances to replead, but each version of the pleading made allegations that were either contrary to the wording of the exculpation clause or legally insufficient. In fact, the bankruptcy court allowed Van Deelen to amend his pleadings on two different occasions—three times if one counts the Second Amended Petition. Therefore, even if one takes into consideration and affords some leeway to an individual acting *pro se*, the bankruptcy court gave Appellant a number of chances to comply with the rules.[8]

After the pleadings were finalized and the bankruptcy court was called upon to rule on the sufficiency of the pleadings, the only remaining cause of action alleged against the McDermott Appellees was fraud. (Adv. 20-3309, Doc. No. 57).[9] The Third Amended Petition alleged only common law fraud, unlike earlier petitions that contained statutory fraud claims, negligent

---

[8] The Court should note that even though Appellant has been acting *pro se* throughout the various underlying proceedings, he has continuously maintained that he is knowledgeable in the ways of litigation.

[9] The fraud and tort related claims against Sussberg and the ultimate dismissal of those claims will be discussed below.

misrepresentation, and breach of fiduciary duty claims. It, like its predecessors, started with a lengthy history leading up to and including the bankruptcy. It outlined a number of misrepresentations allegedly made by McDermott and its employees throughout the period leading up to the bankruptcy, but never identified any individual involved in any specific act, representation, or misrepresentation. Additionally, in the Third Amended Petition Van Deelen for the first time specifically pleaded the following:

> 20. Neither the creation of the scheme nor the defendants' acts under the scheme, including those acts mentioned, discussed or detailed herein, were done while the defendants were acting under the scope of their employment. Nothing herein alleges, assumes or implies that the defendants were acting under the scope of their employment when they acted under the scheme or when their actions harmed the plaintiff.

(*Id.* at 11).

It is not clear why this disclaimer was included because the vast majority of the factual allegations clearly outline alleged acts (at least those pertinent to any claim pleaded) that virtually all had to have been done by someone acting in the course of their employment for McDermott. The bankruptcy court speculated that it was an attempt to avoid the effect of the confirmation order. Regardless of the reason for its inclusion, it certainly rendered the Third Amended Petition ambiguous at best.

As presented to the court below, Van Deelen's only claim against the McDermott Appellees was common law fraud. The bankruptcy court analyzed the allegations in detail, and even created a timeline of the alleged misrepresentations, and noted that all of Van Deelen's allegations concern the failure to inform "him and the investing public" about McDermott's financial status and the possibility of a bankruptcy filing. (Adv. 20-3309, Doc. No. 81 at 7). It noted, as this Court alludes to above, that as alleged, the misrepresentations were made by McDermott's employees. Consequently, if the Appellees had anything to do with that alleged

14

misconduct, it seemingly had to have been during the course and scope of their employment at McDermott—the very fact that Van Deelen's Third Amended Petition specifically disclaims.

Ultimately, the bankruptcy court found that the Third Amended Petition failed to set forth the specifics of the false representations that form the basis of the claim. Secondly, the court found that, due to the "course and scope" disclaimer mentioned above, the Third Amended Petition failed to allege a duty owed by the Appellees. This latter deficiency is especially troubling when many of the allegations concern acts of omission. There can be no cause of action for the failure to disclose information unless there is a duty to disclose. The court noted that in this context, the McDermott Appellees would have no duty to any third parties if they were not acting in the course and scope of their employment with McDermott. Moreover, the court below noted that even if their actions committed were in the course and scope of their jobs at McDermott, they still might not have a duty to disclose any facts as to Van Deelen because the McDermott Appellees did not owe any fiduciary duty to investors—including Van Deelen. The duty to disclose normally arises from a statutory, contractual, or common law obligation such as a fiduciary owes. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 771 (S.D. Tex. 2007). The employees, officers, and directors of a company may owe a fiduciary duty to the company, but there is no corresponding duty to individual stockholders. *Ritchie v. Rupe*, 443 S.W.3d 856, 890 (Tex. 2014). All of these factors highlight the need for the pleadings to comply with Rule 9 of the Federal Rules of Civil Procedure, discussed below.

Despite its lengthy factual recitations, this Court also finds the Third Amended Petition to be deficient and therefore affirms the bankruptcy court on this point. To plead a cause of action for fraud in federal court, one must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which states: In alleging fraud, a party must state with particularity the circumstances constituting

15

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally, but the specifics may not. This is sometimes referred to as the "*who, what, when, and where*" requirement. *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)).

Appellant's Third Amended Petition fails to meet this standard. The significance of the application of Rule 9 should not be underestimated, especially in a case like this. As noted above, Van Deelen's Third Amended Petition contains a lengthy background section that details numerous acts that Van Deelen claims maintained McDermott's stock at an artificially high level and concealed McDermott's true financial condition and the planned bankruptcy from him and the other members of the investing public. (Adv. 20-3309, Doc. No. 57). The Third Amended Petition has over 35 pages of allegations of various activities purporting to either artificially prop up McDermott's stock price or mislead the public as to the planned bankruptcy or both. (*Id.* at 4–41). These acts or omissions (as described in the pleading) were seemingly carried out, at least in part, by individuals working at McDermott. Yet, Appellant creates an internally contradictory situation within his own pleading by adamantly and unequivocally stating that none of the actions that the McDermott Appellees took were within the course and scope of their employment. If these acts or omissions were not taken by the McDermott Appellees in the course and scope or their employment at McDermott, when, where, how, and by whom were they taken? The Third Amended Petition is silent on these points. Thus, the need for compliance with Rule 9(b) was vitally important, and the failure to comply with it undercuts the basis for the entire pleading.

Appellant argues that he does not have to comply with federal pleading standards or the Federal Rules of Civil Procedure because he was pleading a Texas state (common law) cause of action. The Fifth Circuit has been consistently clear that federal courts, regardless of the origin of

16

the pleading, should apply the federal rules even in removal cases. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). "Our precedent is clear: a federal court must apply the federal pleading standard." *Id.*

This Court first notes that Appellant's argument might have more sway if it were reviewing the Original Petition that was filed in the district court of Montgomery County, Texas. Some courts have felt that it is too harsh to judge a pleading filed in state court by federal court standards. *See e.g.*, *Holmes v. Acceptance Cas. Ins. Co.*, 942 F. Supp. 2d 637, 646 (E.D. Tex. 2013); *Centro Cristiano Coscecha Final, Inc. v. Ohio Cas. Ins. Co.*, No. H-10-1846, 2011 WL 240335, *5–6 (S.D. Tex. 2011). Nevertheless, even those cases that appear to apply a more lenient pleading standard with regard to the initial petition removed from state court only suggest that before dismissal courts should allow a plaintiff a chance to replead. *See Edwea, Inc. v. Allstate Ins. Co.*, No. CIV.A. H-10-2970, 2010 WL 5099607 (S.D. Tex. Dec. 8, 2010) and the cases cited therein. Here, the Appellant was given multiple chances to replead and comply with Rule 9. Regardless of how charitably one views the Original Petition, the last two petitions (First Amended and Third Amended) were filed in federal court and needed to comply with federal pleading standards. It is also significant to note that after Van Deelen filed his First Amended Petition, the Defendants responded by filing a motion to dismiss making this very argument. (Adv. 20-3309, Doc. No. 51 at 17–22). Therefore, despite knowing about this alleged deficiency, Appellant made no attempt to remedy the problem when he filed his Third Amended Petition. In fact, his course and scope disclaimer only made the situation worse. Consequently, it is clear Appellant knew about the Defendants' contentions that his pleadings failed to comply with Rule 9, was given a chance to amend, and either chose not to comply or could not comply. Either way, the bankruptcy court's ruling was correct.

Moreover, the lack of specificity as to the when, what, where, and how was not the petition's only problem. Fraud allegations must be specific as to each defendant. While a subset of the "who, what, when, where, and how" that Rule 9(b) requires, this circuit has always frowned upon group pleadings. Group pleadings have long been found to be insufficient.

> Consistent with our rejection of the "group pleading" doctrine, we do not construe allegations contained in the Complaint against the "defendants" as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded. While the plaintiffs aver in paragraph 21 of the Complaint that the individual defendants "each controlled the contents of and participated in writing INSpire's SEC filings, reports and releases," this conclusory allegation fails to specify which of these documents is attributable to each individual defendant, let alone which portions or statements within these documents are assignable to each individual defendant.

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). *See also Taylor v. IBM*, 54 Fed. Appx. 794 (5th Cir. 2002).

The *Southland* opinion is particularly relevant here as that case dealt with a complaint alleging securities fraud against a company and a number of individual defendants. Albeit based upon federal securities law, the *Southland* plaintiffs claimed they were the victims of security fraud because they bought their stock based upon certain misleading statements and press releases, and that the defendants failed to issue accurate earnings and revenue estimates and failed to timely classify certain receivables as uncollectable. *Southland* at 360. The similarities between that case and the allegations in this one cannot be ignored. That district court dismissed the complaint because the investor-plaintiffs did not make their complaints specific as to each defendant, and was affirmed by the Fifth Circuit. Like the plaintiffs in *Southland*, Van Deelen here did not make any of the fraud claims defendant specific.[10]

---

[10] His claims for infliction of bodily injury (Count 2), assault—physical contact (Count 3), assault—threat (Count 4), and false imprisonment (Count 5) are made defendant specific, but they only specify Sussberg.

Thus, Van Deelen's fraud pleading failed to comply with Rule 9(b) for a number of reasons. He did not comply with the "who, what, when, where, and how" requirements of the rule, and he consistently lumped all defendants together, thus violating the group pleading doctrine. These overlapping failures to comply with the requirements of Rule 9(b) are enough to warrant dismissal in any case, but they are especially applicable here where the Plaintiff on the one hand pleads various acts of commission and omission in connection with the actions of a company and its employees, but on the other hand clouds the issue by pleading that the individual defendants were not acting in the course and scope of their employment with that company when they took the complained of actions.

## IV.     Claims Against Defendant Joshua Sussberg

Some might claim that it is unclear whether Appellant intended to appeal the dismissal of his claims against Joshua Sussberg. This Court does not find the status of the pleadings to be confusing. While Van Deelen includes Sussberg on the cover page of the Appellant's Brief as one of the Appellees (Civ. A. 21-3369, Doc. No. 12 at 1) and uses the plural term "Appellees" throughout his briefing, in his statement of the case he mentions only Appellees Dickson, Spence, and Lamb. He also states:

> On August 16, 2021, after learning of defendant Sussberg's cancer diagnosis, plaintiff voluntarily dismissed all claims against defendant Sussberg. The bankruptcy court granted Sussberg's dismissal. That left only one claim, the common law fraud state claim, against non-debtor defendants Dickson, Spence and Lamb.

(*Id.* at 14) (citations omitted).

The Court finds this statement to be confirmation that, despite including a mention of Sussberg on the cover page of his opening brief, Van Deelen has *not* attempted—and is not attempting—to appeal the fact that the bankruptcy court granted the motion to dismiss Joshua

19

Sussberg. This conclusion is also reinforced by the fact that Van Deelen replied only to the briefing filed by Defendants Dickson, Lamb, and Spence, and not to Sussberg's separate response. (*Id.*, Doc. No. 18). The dismissal order of the bankruptcy court stands.

Nevertheless, to the extent that anyone could utilize a strained interpretation to conclude that Van Deelen has appealed the dismissal of Sussberg, the Court hereby finds that appeal to be without merit. Van Deelen voluntarily filed the motion to dismiss all claims as to Sussberg. He not only moved the court to dismiss Sussberg, but he also filed a proposed order dismissing Sussberg. (Adv. 20-3309, Doc. No. 52). The bankruptcy court then granted a dismissal. (*Id.*, Doc. No. 81 at 10). There was no error in that ruling. In this appeal, Van Deelen does not claim any error in this respect, nor could he, as he urged the court below to grant a dismissal utilizing Fed. R. Civ. P. 41(a)(2) and that is just what the court did. (*Id.*, Doc. No. 75 at 3); (*Id.*, Doc. No. 81 at 10). The judgment dismissing all claims against Sussberg is affirmed.

## V.    **The Motion to Seal**

Appellant complains that the bankruptcy court erred in granting Appellee's Emergency Motion to Seal. Van Deelen responded in opposition; thus, the motion was filed and briefed before the court granted the motion. (Adv. 20-3309, Doc. Nos. 36, 44). A decision to seal (or restrict access to) a pleading is evaluated by an abuse of discretion standard. *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

The Bankruptcy Code empowers a court to seal documents that contain confidential or inflammatory matters. 11 U.S.C. § 107(b). Van Deelen concedes this in his briefing. (Civ. A. 21-3369, Doc. No. 12 at 51). He does not contest that the material that Appellees sought to be sealed contains defamatory material. His main complaint is that he requested a hearing and did not receive one. Moreover, he points out the order granting the motion states the court "heard the statements

in support of the relief requested at a hearing before the Court." (*Id.*, Doc. No. 18 at 11). Since no hearing was held, Van Deelen argues that the record was falsified.

Clearly, the court's order sealing the material contains a drafting error. No party claims that an actual hearing was ever held, and the docket sheet contains no evidence of one being held. This error could have occurred because the bankruptcy court may have used the order that accompanied the motion as a template without correcting it. (Adv. 20-3309, Doc. No. 78). Regardless of the reason, it is clear no hearing was held and that the portion of the order stating a hearing was held is an error. Nonetheless, this Court has reviewed the motion, Appellant's response, and, more importantly, the evidence that was the subject of the motion, and finds that the bankruptcy court did not abuse its discretion in granting the motion. Despite the mistake in the order, the material in question contains unsupported (and most likely unsupportable) allegations of alleged misconduct. The material that was sealed is, indeed, inflammatory and sealing it was not an abuse of discretion.

Van Deelen's secondary complaint seems to be that he had no intention of filing the sealed matters so there was no need for the Appellees' motion or the court's order. (Civ. A. 21-3369, Doc. No. 12 at 51). That being the case, Van Deelen was not prejudiced, and any error in the sealing was therefore harmless since the material was not ever going to be used.

This Court finds that, despite the bankruptcy court's error in referencing a hearing, it was not an abuse of discretion to seal the material in question.

## VI.    The Motion to Recuse Judge Jones

The final focus of Appellant's appeal is that his motion to recuse Judge Jones should have been granted. Generally, a party may request a judge to recuse if his or her impartiality might be questioned or if he or she has a personal bias or prejudice against a party. 28 U.S.C. § 455. This

issue is to be adjudicated by a review of the entire course of the proceeding and the review is to be made from the vantage point of a well-informed objective observer. *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). The burden of proof is on the movant and the standard is one of clear and convincing evidence. *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631, 634 (5th Cir. 1971).

It bears repeating that Appellant's motion to recuse was not resolved by Judge Jones. Instead, he referred the motion to Judge Isgur for consideration. (Adv. 20-3309, Doc. No. 40). Both sides briefed the issue and then Judge Isgur held a telephone hearing and subsequently denied the motion. (*Id.*, Doc. No. 42). Appellant sought a writ of mandamus from the Fifth Circuit to compel recusal (Civ. A. 20-20286, Doc. No. 00515438014), but that petition was denied. (*Id.*, Doc. No. 00515779030). This Court must, however, address this issue because the Fifth Circuit's denial of the petition for a writ of mandamus was not based on the merits and thus was not dispositive of this issue.

The actual briefing on this issue in the court below and to this Court was not as organized and concise as it was in the Fifth Circuit; however, in the pleadings filed below, Van Deelen incorporated the Fifth Circuit briefing by reference. (Civ. A. 21-3369, Doc. No. 12 at 63). While probably not the most orderly procedure to follow, given that the Appellant is *pro se*, this Court has considered all matters as being raised, if the matter was either raised below or raised in the petition for writ of mandamus filed in the Fifth Circuit that was later incorporated by reference.

The complaints that Appellant contends justify recusal range from rulings on certain motions to the failure to hold hearings on certain motions, as well as individual exchanges and incidents that occurred during the bankruptcy case. While the failure to hold a hearing, or the failure to grant a motion or a specific ruling on a motion in the bankruptcy proceeding, should

have been included in an appeal on the merits following entry of the confirmation order to the extent a party is claiming a substantive error, the Court finds that these incidents may nonetheless be considered here to the extent they might evidence bias or partiality. That being said, the Court finds that none of the complaints raised by Van Deelen compel the conclusion that Judge Jones should have recused himself. Nonetheless, this Court will individually address the major points raised by Van Deelen.

A.      **Motion to Investigate Bankruptcy Fraud**

Appellant complains that he was never given a hearing on his "Motion for an Order Sustaining Party in Interest Opposition and Objection to Confirmation of Debtor's Plan, Granting Party in Interest's Modified Plan, in Whole or in Part and Ordering an Investigation Pursuant to 18 U.S.C. § 158(D) and 18 U.S.C. § 3057." (Bk. 20-30336, Doc. No. 509). His complaint here focuses on the fact this motion was never scheduled for a hearing and his contention that this failure indicates bias.

First, the Court notes that the failure to hold a hearing, in and of itself, is not reversible error and certainly not evidence of bias. Second, the Court notes, to the extent this motion was filed in opposition to the proposed plan, there was already a hearing scheduled on plan confirmation in a matter of days. Van Deelen attended and participated in that hearing. He was free to put on evidence of fraud or voice his position concerning his opposition to confirmation. This was his opportunity to attack the proposed plan or to propose modifications to protect his interests. If the plan was based upon fraud, he could have presented the evidence in order to thwart the plan confirmation.

Third, to the extent Van Deelen's motion was intended as an accusation of bankruptcy fraud against McDermott, its management, or advisors, it was unsupported by any evidence.

23

Section 3057 states that any judge, receiver, or trustee "having reasonable grounds for believing" that a violation of the bankruptcy laws has been committed should report to the appropriate United States Attorney the facts and circumstances. This Court initially notes the statute does not require a hearing. *See* 18 U.S.C. § 3057. Moreover, Van Deelen's motion is devoid of facts concerning violations of bankruptcy laws that would support a court having reasonable grounds to believe bankruptcy fraud was occurring. The motion does contain a detailed factual recitation of the pre-bankruptcy conduct that Van Deelen found troublesome, but that is not conduct that falls under the umbrella of bankruptcy fraud covered by § 3057. 18 U.S.C. § 3057 (limiting conduct to "insolvent debtors, receiverships or reorganization plans").

Importantly, the record also shows that Appellant filed the motion in question on February 27, 2020. On March 9, 2020, the Court held a hearing on Appellant's "Expedited Motion for an Order Continuing the March 12, 2020, Plan confirmation hearing Until Such Time as the Lummus Stalking Horse Purchaser Has Shown It Has Obtained, Or Can Obtain, Funds To Consummate The Lummus Purchase And Request for Earliest Possible Hearing Date On This Motion." (Bk. 20-30336, Doc. No. 557). While not specifically a hearing on the motion in question, to the extent that actual bankruptcy fraud was being committed, the judge gave him a chance to present or explain his theories to the court. Judge Jones specifically asked Van Deelen:

> **[Y]ou make reference to a set of circumstances that you believe constitutes or suggests fraud on the court.** However, if you read the plan, you know that that set of circumstances can't happen. **And so I'm sort of curious as to what it is you're really seeking and what it is you're really complaining about.**

(*Id.*, Doc. No. 664 at 5–6) (emphasis added).

This inquiry by the court is followed by a discussion between Van Deelen and Judge Jones which focused on the sale of Lummus and whether that sale would actually come to fruition. Eventually, the court and Van Deelen had the following exchange:

24

MR. VAN DEELEN: So the entirety of the plan since then has been, we're going to sell Lummus, we're going to sell Lummus. Judge, I hope they do sell Lummus.

THE COURT: Right.

MR. VAN DEELEN: I want them to sell Lummus.

THE COURT: Right.

MR. VAN DEELEN: But I don't think they're going to.

THE COURT: So let's explore that branch of the tree, if you will, because I think that's where you and I aren't on the same page.
So, do you agree with me that the effective date of the plan can't occur unless the sale is completed?

MR. VAN DEELEN: Yes.

THE COURT: All right. And so if the plan can't go effective, then this -- the events that you complain about can't happen by operation of law, it can't happen.

MR. VAN DEELEN: I agree with that, Your Honor.

THE COURT: Okay. Well, that's -- I mean, but you told me in your pleading -- and again, those are things I read and take very seriously, is if you agree they can't happen, the premise of your pleading was, that this is what's going to happen. And, I mean, it seems to me that – I'm a little concerned that perhaps you have misled me, I'm sure inadvertently, and I'm trying to figure out why.

MR. VAN DEELEN: No, I'm not trying to mislead you, Judge.

THE COURT: So we've got a confirmation hearing coming.

MR. VAN DEELEN: Right.

THE COURT: And part of 1129 is going to be proof that the plan is feasible. Isn't that the right place to test whether or not they have a sale? Because – I'm going to tell you what's going to happen, and I'm not going to let him talk today.

MR. VAN DEELEN: Okay.

(*Id.* at 7–8).

Later, the court for a second time tried to identify the exact issues at the heart of Van Deelen's fraud allegations:

THE COURT: So if we come back to why we're here today, why are we here today, given your acknowledgment that what you're complaining about really is part of confirmation? So you want to stop confirmation so that you never find out whether or not the plan is feasible? Is that the goal?

MR. VAN DEELEN: No, Judge, and if you've interpreted –

THE COURT: So then why don't we get to confirmation and make the parties put on their proof, if they have it, and then we can make a call as to confirmation itself and whether or not the requirements of 1129 have been satisfied?

MR. VAN DEELEN: You make me feel better, talking to me, that that's going to happen, okay?

THE COURT: How could it not happen?

MR. VAN DEELEN: I have no idea, Judge, but like I said, I haven't been to a confirmation hearing. And so far everything in this case has been -- and you're overwhelmed –

THE COURT: I'm not overwhelmed at all.

MR. VAN DEELEN: Have you read the several thousand pages –

THE COURT: Every single line.

(*Id.* at 22–23).

MR. VAN DEELEN: And I'm petitioning you today to postpone the confirmation hearing until we see if these guys have the money. Now, how long will that take? It will take until about midnight today, because they have to come up with -- I think it's $100 million. Let's see if they do. Okay? And if they don't, then in my opinion, Your Honor, you have a new whole set of issues that you have to face, you have to deal with. It's fraud, okay?

Because the whole time they've had this plan, this plan, this plan, and let me tell you, they set the plan up to fail. Okay? I mean, the sale. They set the sale up to fail. How'd they do that? We don't know all the reasons, but one of the reasons is they say, well, you have to buy this company for at least 2.725 million –

THE COURT: Billion.

…

MR. VAN DEELEN: So that's what I'm trying to show, is just this. And if they come up on Thursday -- looks like we're going there, okay -- if they come up on

Thursday and they say here's our plan, you know, we're ready to go, we paid our escrow, got the cash, let's go with the sale, great, because then I'm going to argue that that's enough, that they don't have to do some of the other things they're trying to do.

(*Id.* at 25–27).

Thus, to the extent that Van Deelen clearly tied his "fraud" claim as to whether the Lummus sale was going to take place, that issue was going to be addressed at the confirmation hearing. (*Id.* at 31). To the extent Van Deelen's motion concerned pre-bankruptcy conduct, that conduct is outside the purview of § 3057. Moreover, the court asked him about the fraudulent circumstances of which he was complaining, and he was free to answer as he wished. Finally, to the extent that Van Deelen was alleging "true" bankruptcy fraud, his motion cites no facts that the court could consider as constituting "reasonable grounds." Thus, while not getting a specific hearing focused on his bankruptcy fraud motion, the court at a hearing explored his actual worries concerning fraud.

His remaining complaints in that motion concern the actual proposed Plan whereby he (and other similarly situated stockholders) would effectively lose his investment while others (allegedly including certain employees and management), as a result of the plan, will "make themselves rich in the process." (*Id.*, Doc. No. 509 at 22). This is exactly the kind of argument (if supported by evidence) that could be used as a basis to object to Plan confirmation and to hopefully force a rejection or modification of the Plan. Van Deelen was allowed to and did participate in the confirmation hearing, but the evidence he solicited, and his arguments, did not carry the day.

The failure to get a hearing on a particular motion does not demonstrate bias nor is it a ground for recusal. Van Deelen's motion was unsupported by any evidence and concerned factors not under the purview of § 3057. Therefore, no hearing was necessary. If his complaints concern the actual Plan implementation, and the bankruptcy judge was in error in confirming the Plan, that alleged error may be a ground for appeal to reverse the confirmation, but not for recusal here.

### B.     Inadequate Notice of the Modified Plan

This same conclusion applies to Van Deelen's next complaint—that he was given inadequate notice of the terms of the modified confirmation plan. The Court notes, as the bankruptcy court did, that the Plan's treatment of Van Deelen and those similarly situated did not change from the prior version of the Plan to the amended one that was eventually considered. Consequently, as far as his own interests were involved, Van Deelen had sufficient notice of all of the matters that affected him. The denial of a continuance may have been a ground for appeal but is not evidence of bias that would be a basis for recusal below.

### C.     Verbal Exchanges Between the Court and Van Deelen

Van Deelen also complains that the judge accused him of interrupting or "talking over" him. This Court has reviewed the record and it is clear that there were episodes where it appears that Appellant did, in fact, talk over the judge or vice-versa. Even Van Deelen admitted talking over or interrupting the judge. In fact, at one hearing, he interrupted the judge to explain why these interruptions occurred.

> THE COURT: You've spent your entire – I'm sorry?

> MR. VAN DEELEN: Here's the problem I'm having, Judge, is just your – it's your way of speaking. You know, I'm not trying to interrupt you, but you kind of speak and then you pause, you know, I jump right in and then you keep speaking and then – you're interrupting. I'm not trying to do that. So that's the problem I'm having. You know, I've done enough stuff in court and stuff, I know -- you know, if you're shy, you die, okay?

> So I apologize for that. But that's, I think, the problem I'm having and why you're interpreting that I'm trying to interrupt you. And I'm not. But you kind of pause and then I think, well, okay, you know, and then there I go and then you continue. So I'm not trying to do that. Okay.

> And you had said something a minute ago -- I can't remember what it was -- but it was something about me that was not true. So I don't -- I would just like to put on the record because I don't remember what it was, anything that's gone on the record

> that indicates that I've been disrespectful or intentionally baited you or interrupted you has not been intentional. Okay? I'm not trying to do that.

(Bk. 20-30336, Doc. No. 664 at 21–22).

This Court agrees with Van Deelen that on occasion a person's manner of speaking or speech pattern can lead another to accidentally interrupt the speaker. While most times no offense is intended, this can cause problems in court. The fact that a judge tries to keep a lawyer or party or witness from interrupting, talking over, or stepping on another participant is common practice and not evidence of bias, especially when some of the participants are remotely participating by phone or Zoom.[11] It is necessary for a number of reasons. First, it is essential for an orderly hearing and presentation of the arguments and evidence. Second, it helps ensure civility in the proceedings. If individuals interrupt each other, what was once a cogent presentation of the positions soon disintegrates into mere bickering between the sides which benefits no one.[12] Finally, when individuals talk over one another, it presents problems for the court reporter or transcriber (if the hearing was recorded by an electronic recording officer). Interruptions make it hard for them to transcribe everything that is said and also makes it difficult to accurately attribute each statement to the correct speaker.

Sometimes these interruptions are unavoidable, but all courts try to keep them to a minimum. To the extent these reminders can be described as "accusations," Van Deelen was not the only individual "accused" of that practice in the proceedings. In fact, in the hearing quoted above, the judge had to stop and make certain that individuals attending by phone were being heard.

> THE COURT: All right. Thank you. Good morning. Anyone on the telephone wish to make an appearance?

---

[11] For example, the confirmation hearing had over 125 individuals participating remotely.

[12] As John Locke once said, "[t]here cannot be greater rudeness than to interrupt another in the current of his discourse."

MS. SCHONHOLTZ: Good morning, Your Honor. Margo Schonholtz on behalf of Credit Agricole from Linklaters.

THE COURT: All right. Thank you. Good morning. Anyone else need to make an appearance?

MS. TSIOURIS: Good morning –

MR. RAY: Your Honor, this is Hugh Ray, III –

THE COURT: Thank you, Mr. –

MR. RAY: Sorry. Your Honor, this is Hugh Ray, III, on behalf of Illuminate Buyer.

THE COURT: All right. Thank you, Mr. Ray. **And I believe there was a young lady that Mr. Ray spoke over the top of.**

MS. TSIOURIS: Yes, Your Honor. Good morning, Your Honor. Natasha Tsiouris of Davis Polk & Wardwell on behalf of the Ad Hoc Group of Term Lenders.

THE COURT: All right. Thank you. Good morning to you. Anyone else on the telephone wish to make an appearance?

(Bk. 20-30336, Doc. No. 664 at 3–4) (emphasis added).

This recitation demonstrates the judge "accusing" a seasoned bankruptcy lawyer of "speaking over the top of" someone else. Such statements are not indicative of partiality or bias, they are merely an indication that the court is trying to maintain an orderly record. As such, they are not grounds for recusal.

## D.    Other Acts of Alleged Bias

The Court now addresses some of the individual acts that Appellant contends demonstrate Judge Jones' bias against him. This Court has not been able to locate some of Appellant's complaints in the record because he sometimes cites to large segments of the record, or he paraphrases interactions. Thus, while this Court is confident that it has located most of the complaints, it has been unable to locate all of them. Nevertheless, for purposes of this appeal, this

30

Court will assume the statements or the "words to that effect" contained in Appellant's brief were actually spoken, except for the instances that Appellees have specifically objected.[13] In places where there is a controversy, the Court adheres to the transcribed record or the audio recording. The Court first addresses what appears to be the most controversial exchange.

### 1.   Calling the Bankruptcy Court a Derogatory Name

The Appellees claim that during the March 12, 2020, confirmation hearing Van Deelen called the bankruptcy judge a "son of a bitch." (Civ. A. 21-3369, Doc. No. 15 at 20); (Bk. 20-30336, Doc. No. 694 at 3). While that statement does not appear in the hearing transcript, the Appellees and/or their counsel claim they heard the statement, as did Judge Jones' staff. It was picked up quite faintly on the audio portion of the hearing. (Bk. 20-30336, Doc. No. 666 audio at 3:19:29–3:21:20). The bankruptcy court did not hear it live, but, according to the record, it conferred with members of the court staff who did hear it live, and then listened to the recorded session. Van Deelen filed a sworn affidavit with the court denying he made the disparaging remark. (*Id.*, Doc. No. 701). Appellees maintained that he did. The bankruptcy court found that Van Deelen did make the statement and, while "willing to overlook the insult," the court could not "overlook a false statement" (the denial of the statement). (*Id.*, Doc. No. 719).

Obviously, this Court cannot identify a very faint voice from the audio. Moreover, since that statement is not transcribed in the record, it is not officially attributed to anyone. All the witnesses, except Van Deelen, attributed the statement to Appellant. Nevertheless, the bankruptcy court did not hold Van Deelen in contempt. Instead, the judge considered only the denial of the statement as it might affect Appellant's credibility. The fact that the judge was later called upon to make a credibility judgment that eventually went against Van Deelen is not evidence of bias. The

---

[13] Van Deelen in his brief in one place purports to quote the court below but then qualifies his own quotes by describing them alternatively as "or words to that effect." (Civ. A. 21-3369, Doc. No. 12 at 54).

factual dispute that occurred where credibility became an issue had nothing to do with the outcome of this case or the McDermott bankruptcy case. Judges are called upon to make credibility judgments on a daily basis. The factual dispute occurred when the bankruptcy court found the debtors' version of the facts to be more credible when called upon to resolve the Debtors' Emergency Motion to Appear and Show Cause Why Van Deelen Should Not Be Held in Contempt of Court (*Id.*, Doc. No. 694) and Van Deelen's competing version of events set out in his Response (*Id.*, Doc. No. 701). Even then, the court did not hold Van Deelen in contempt. In fact, it denied the request for sanctions. Instead, the court restricted Van Deelen's direct contact with the Debtor's counsel and his family and his interactions with court staff. (*Id.*, Doc. No. 719). These restrictions, as discussed below, obviously worked as no further confrontations occurred and the subsequent proceedings did not involve allegations of misconduct by either side. The manner in which this situation was handled does not evidence bias and it certainly had no impact on any substantive issue.

## 2.    Fear of Retaliation

In his petition for writ of mandamus to the Fifth Circuit, Van Deelen claims he "fears that Mr. Sussberg will use the trial court's March 23, 2020, Order as a means to continue to retaliate against Petitioner by having him falsely arrested." (Bk. 20-30336, Doc. No. 939 at 27–28). He states that his "freedom is now in the hands of a person (Mr. Sussberg) who has previously assaulted [him]." (*Id.* at 28). This putative false arrest obviously never happened.

Van Deelen is referencing the bankruptcy court's order on the emergency motion to hold Van Deelen in contempt. (*Id.*, Doc. No. 719). Throughout his pleadings, Van Deelen frequently characterizes this order as a "permanent injunction." The order specifically prohibited Van Deelen from contacting Joshua Sussberg or "any member of his family in any manner" and stated that law

enforcement may detain Van Deelen if Sussberg finds it "necessary…to protect his family and enforce this order." (*Id.* at 2).

Considering the "vulgar and threatening comments" Van Deelen allegedly made to Sussberg and his family and the subsequent controversy, the Court finds that the bankruptcy court's order was reasonable. Should Van Deelen contact Sussberg or his family and make him fear for his family's safety, then Sussberg could enforce the order and have Van Deelen detained. This Court appreciates that Van Deelen denies any untoward conduct. The order's ultimate scope was narrow, and the Court finds little chance the order could have been used to "retaliate" against Van Deelen. More importantly, it was never used to Van Deelen's disadvantage. The order in question is not evidence of bias or partiality on the bankruptcy court's part.

### 3.    The Bankruptcy Court's Denial to Hold a Hearing

After receiving the order of March 23, 2020, Van Deelen requested that the court hold a "clarification" hearing to discuss whether the court had precluded him from suing Sussberg and suing Judge Jones. (*Id.*, Doc. No. 723). Additionally, he pleaded that he wanted the court to cite the exact circumstances surrounding any disrespectful conduct between Van Deelen and the court staff, the audio record to which the court referred, and the court's training in diagnosing mental health issues. Finally, he asked for "clarification as to if and when the Court heard him say that he (Van Deelen) was going to shoot someone."[14] Van Deelen complains that Judge Jones displayed bias by not holding a hearing.

---

[14] This Court notes that Van Deelen does not point this Court to any place in the record where that was said. This Court has been unable to find any place where the bankruptcy court stated that Van Deelen threatened to shoot anyone. Its order more likely refers to the following exchange during the March 12, 2020, confirmation hearing in which Van Deelen raises shooting:

> The Court:       Well, how could it be worse than to get nothing for something you had?
>
> Van Deelen:    They're going to come out to my house and shoot me. Okay? Is that worse?

Essentially, this is a motion for rehearing and the failure to hold an actual hearing in such circumstances is not evidence of bias. The bankruptcy court denied the request to hold a hearing and found that a hearing would serve "no legitimate purpose." (*Id.*, Doc. No. 849). While Van Deelen complains this denial is a demonstration of bias, the record does not support such a claim. First, the motion raised no new matters. Second, Appellant could request the recording and locate the statement himself. Third, it is clear that the court's order put no limitations on Van Deelen suing anyone. Indeed, he subsequently sued Sussberg and the McDermott Appellees here without consequences. He also sought the recusal of Judge Jones with no retaliation. Fourth, there was no legitimate reason to inquire about the court's training to diagnose individuals with mental health problems. Finally, Van Deelen's request concerning the court's staff was without merit as the judge did not find that Van Deelen had been abusive to the staff.

Having said that, the court's staff did confirm the alleged cursing and attributed it to Van Deelen. Van Deelen obviously disagreed with their position. A preventative measure to ensure no conflict occurred was not inappropriate. The same can be said of the court's order not to directly contact parties, except in writing. Clearly, the goal of the court's order was to limit the contact between Van Deelen and anyone else who had allegedly heard the untoward remark and attributed it to Van Deelen. This action no doubt sought to pre-empt any escalation of an already tense situation. The court, obviously, wanted to stop all the bickering and concentrate on the merits. Moreover, an order limiting any contact to writing eliminates the need for the court to have to resolve factual disputes over who did what to whom, who started it, what was said, and what was not said.

---

(Bk. 20-30336, Doc. No. 690 at 173:10–13).

34

### 4.    Miscellaneous Complaints of Bias

Van Deelen additionally claims that the bankruptcy court's actions denied him equal access to the courts, painted him as an "unsavory person," a "second class citizen," and "persona non grata," and placed his freedom in the hands of the very person (Sussberg) that had earlier "assaulted" him. The record is devoid of any evidence that any of these untoward results have actually occurred. Obviously, the outcome of the bankruptcy proceedings was damaging to Appellant's interests. It is important to note, however, that he was treated by the Confirmation Plan just the same as others similarly situated. Van Deelen could have appealed the confirmation order, but he chose not to. In the proceeding now being appealed, the bankruptcy court gave him multiple chances to replead his complaints against the Defendants. He has been able to file motions, responses, and briefs. There is no objective evidence that Appellant's rights to participate in the process were curtailed in any meaningful fashion.

With regard to Sussberg's alleged "assault," Van Deelen was at the time encouraged to, but refused to, make a report to court security officers about the conduct. Van Deelen was also able to sue Sussberg for alleged fraud, assault, and related torts. He voluntarily chose to dismiss these claims due to Sussberg's illness. While his motivation for dismissing these claims might have been laudable, he certainly was able to bring these claims. Clearly, there is no evidence his access to the courts has been denied. Moreover, the bankruptcy court repeatedly denied Appellees' motions for sanctions to be awarded against Van Deelen. If the bankruptcy court considered Van Deelen "persona non grata" or was going to treat him as a second-class citizen, it had the perfect opportunity to sanction him. Yet, it denied Sussberg's motion and supplemental motion for sanctions. (Adv. 20-3309, Doc. Nos. 59 and 72).

35

This Court understands that Van Deelen was upset. While it does not know the full extent of his losses connected with his ownership of McDermott stock, it is clear that after the bankruptcy the stock was worthless. It also understands why Van Deelen feels that he was in the position of David fighting Goliath when he attempted to attack this "prepackaged" bankruptcy *pro se*. This fight would have been just as daunting (and perhaps just as fruitless) for an experienced bankruptcy lawyer. Nevertheless, this Court does not find the conduct of the court below to demonstrate bias or to lead one to conclude there was a need for recusal.

**5.     Alleged Bankruptcy Court Statements**

Appellant's next complaint relates to a combination of statements that he argues establish bias. First, he claims that the Court referred to the Debtor's lawyers as "the smartest people in the country" while referring to Van Deelen as someone who "knows nothing." (Civ. A. 21-3369, Doc. No. 12 at 56). The Court cannot find, nor does Van Deelen cite, the exact place in the record where the former statement is recorded. In fact, the citation Van Deelen provides in his briefing ("ROA 10-2/483-484") leads one to a copy of his own Petition for Writ of Mandamus. Similarly, the Court cannot find the latter statement as alleged. In the normal circumstance, this, in and of itself, would waive this point, however, since Van Deelen is *pro se* the Court will assume that his quotes are either accurate or at least a good faith attempt at paraphrasing the exchanges.

The actual intent of calling a group of lawyers the "smartest people in the country" can depend on the context and the intent of the speaker. Since the Court cannot find the statements in the record, it cannot evaluate the context. Van Deelen, obviously, feels that the court was praising the other side's lawyers. This could be true, but that does not indicate bias. Clearly, if made, this is not a factual statement, but hyperbole. Judges praise and criticize lawyers all the time— sometimes simultaneously. Moreover, labeling some individuals as the smartest people in the

36

country—especially in Houston—is not necessarily a compliment. The leadership at Enron (many of whom are now convicted felons) were frequently described as the "smartest guys in the room."[15] Thus, a statement of this nature, especially in this courthouse, is not indicative of prejudice or bias, nor is it even necessarily a compliment.

The portion of the record that most corresponds with Appellant's claim that the judge told him he "knows nothing" appears to be a statement made during the hearing held on March 9, 2020. The Appellant contends that this was clearly offensive because he had earlier explained to the judge that he was a graduate of Stanford and the Massachusetts Institute of Technology and a member of Mensa. The circumstances surrounding the judge's comments is important. It occurred at a point in a hearing where the court was explaining to Van Deelen the technical aspects of, among other things, putting on expert testimony, the possibility of having to contend with a *Daubert* motion, and when and how the court would address the issue of whether a "stalking horse" buyer would actually perform. (Bk. 20-30336, Doc. No. 664 at 30:14–15). This exchange did not entail any criticism of Appellant. Many extremely gifted lawyers do not know how to properly reply to a *Daubert* motion or handle a *Daubert* hearing or the intricacies of handling a direct and/or cross-examination of expert witnesses, and many lawyers who are not familiar with bankruptcy proceedings would need guidance.

## 6. The Bankruptcy Court's Alleged Corruption

Appellant claims to have received an anonymous letter that accused Judge Jones of corruption. There is no evidence to suggest that Van Deelen's recitation as to how he came by this "letter" is false. He filed a copy of that letter along with the addendum to his motion to disqualify Judge Jones. (Adv. 20-3309, Doc. No. 39). This Court has reviewed the letter and determined that:

---

[15] *See* MCLEAN AND ELKIND, THE SMARTEST GUYS IN THE ROOM—THE AMAZING RISE AND SCANDALOUS FALL OF ENRON (2003).

1) the contents and sender of the letter have not, and perhaps cannot, be verified; and 2) Appellant's general accusation of corruption to the extent it is based upon this "letter" is unsupported by any facts and therefore does not demonstrate that bias or partiality existed.

The Court notes that the "letter" is unsigned, contains unsupported allegations of a scurrilous nature, and contains no indicia of personal knowledge of authenticity from anyone. (*Id.*). Not even Appellant claims the allegations are true. This form of unsupported character assassination has no place in any court proceeding and cannot be grounds for recusal.

### 7. The Composite Effects of Van Deelen's Complaints

Despite some of the imprecise citations, this Court has reviewed the record as thoroughly as it can and discussed herein the most serious of Appellant's individual complaints. None of the court's actions of which Van Deelen complains individually would warrant a judge's recusal. This discussion does not, however, completely resolve Appellant's argument. The next issue is whether they present a different picture when combined. The Fifth Circuit test regarding recusal is whether a well-informed, thoughtful, and objective observer considering the entirety of the proceedings would find that a judge's impartiality might reasonably be in question. *Andrade*, 338 F.3d at 454–55; 28 U.S.C. § 455. The movant (in this case Appellant) must demonstrate the court's bias or particularity by clear and convincing evidence. *Kinnear-Weed Corp.*, 441 F.2d at 634.

It has been the rule for some time that judicial rulings or acts or omissions during court proceedings are rarely grounds for recusal absent some expression of strongly held prejudice or favoritism. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Expressions of anger, annoyance, or impatience do not satisfy this standard, either. *Id.* at 555–56. Moreover, a judge's actions in handling his or her docket and conducting hearings and trials—even if they seem rigid or heavy-handed—are also not grounds for recusal. *See Sieber & Calicutt v. Sphere Drake Ins. Co.*, 227 F.

Supp. 2d 623 (E.D. Tex. 2002). Given these guidelines, and despite Van Deelen describing the court's actions as "shredding" his civil rights, his proof, even when the proceedings are viewed as a whole, falls far short of proving bias or partiality by clear and convincing evidence. Moreover, while the outcome of the McDermott bankruptcy appears to have negatively impacted Van Deelen, in that context he was not treated differently from any other similarly situated stockholder. More importantly, he has not shown that any alleged untoward act of the court below impacted that result there (or the result here) or deprived him of any right set out in any statute or by any rule.

The Court finds that Judge Isgur did not err in denying Appellant's Motion to Recuse Judge Jones.

**VII.   Conclusion**

For the forgoing reasons, the Court hereby finds the bankruptcy court did not commit any reversible error in ruling on any substantive or procedural aspect of this case. Moreover, the court below did not err in denying Appellant's Motion to Recuse. The judgment of the bankruptcy court is therefore affirmed.

SIGNED at Houston, Texas this 9th day of January, 2023.

Andrew S. Hanen
United States District Judge